LESLIE D. SPENCE, GUARDIAN, APPELLANT, V. HARDIN U.
MINER, SHERIFF, ET AL., APPELLEES.

FILED OCTOBER 21, 1911.    No. 16,770.

Judgment: RELIEF IN EQUITY: JURISDICTION. Where an insane person
is by fraud and without consideration induced to sign a promis-
sory note, upon which a suit is instituted in a county court
without disclosing the maker's mental condition, and he does not
appear and is not represented by his guardian or a guardian *ad
litem*, and, after a transcript of that judgment is filed in the
office of the clerk of the district court of another county, an exe-
cution issued thereon is levied by the sheriff upon the lands of
the incompetent, a court of equity in that county has jurisdiction
at the suit of the guardian to enjoin the sale of his ward's real
estate and to enjoin the judgment creditor from collecting the
judgment.

APPEAL from the district court for Johnson county:
JOHN B. RAPER, JUDGE. ᐧ*Reversed*.

*Hugh La Master,* for appellant.

*L. C. Chapman, contra.* ᐧ

ROOT, J.

This is an action to enjoin the defendant Miner, as
sheriff of Johnson county, from selling the interest of
William I. Young in a tract of land, and to perpetually
enjoin the defendant Boggs from enforcing the judgment
upon which the execution was issued. The defendants'
general demurrer to the petition was sustained, and the
plaintiff's petition dismissed. The plaintiff appeals.

The plaintiff, among other things, in substance, states
in his petition: That letters of guardianship were issued
by the county court of Johnson county in 1902 to one
Duncan as guardian of the person and property of Wil-
liam I. Young, incompetent; that Duncan qualified and
subsequently acted as guardian until October 24, 1908,

upon which day like letters were issued to the plaintiff
as the successor in office of Duncan, and thereupon the
plaintiff accepted the trust and qualified, and is now such
guardian.  It is also charged that the defendant Boggs in
March, 1907, filed a petition in the county court of Lan-
caster county praying judgment against William I. Young
in the sum of $250 and interest upon a certain pretended
promissory note.  A summons was issued in that action,
and subsequently personally served on the incompetent in
Lancaster county.  May 15, 1907, a judgment for $314.92
and costs was rendered by that court against Young on
the cause of action set forth in Boggs' petition.  January
19, 1909, a transcript of the judgment was filed in the
office of the clerk of the district court for Johnson county,
and subsequently the execution referred to was issued
and delivered to the sheriff.  It is also alleged that at the
time the suit was commenced in Lancaster county, and at
all times thereafter, Young had a good defense to that
action, because there was no consideration for the note,
the maker was insane to the extent that he did not and
could not comprehend the meaning of the instrument, and
his signature thereto was procured by the wrongful and
fraudulent acts of the payee; that at the time the sum-
mons was served Young did not understand its object or
purpose, and had no knowledge that the suit was pending;
that, although Boggs knew that Duncan was Young's
guardian, summons was not issued for him or other notice
given of the pendency of that action, and he had no knowl-
edge thereof until more than twelve months after the
judgment was rendered.

The legislature has not provided that summons must
be served on the guardian of an insane adult in order to
give a court jurisdiction to enter a judgment against the
incompetent, but section 23, ch. 34, Comp. St. 1909, pro-
vides that the guardian of an insane person or incompe-
tent person "shall appear for and represent his ward in all
legal suits and proceedings, unless where another person
is appointed for that purpose, as guardian or next friend."

It doubtless was considered that suit would not be instituted against an insane person without either making his guardian a party defendant or stating upon the record the ward's condition, so that the court might discharge its full duty by appointing some qualified, disinterested person to protect the incompetent's interests. Otherwise, in such an action the court might, and probably would, be used as an instrument to perpetrate a fraud. The failure to appoint a guardian *ad litem* for an insane defendant personally served with process has been held not to render the judgment void. *McCormick v. Paddock*, 20 Neb. 486. If, however, it is made to appear that the incompetent's guardian was kept in ignorance of the pendency of the suit, that the incompetent's condition does not appear upon the record in the case, and the judgment was rendered upon a fictitious and fraudulent claim, there is error in the record, although it may not appear from an inspection thereof. Section 602 *et seq.* of the code authorize county courts to vacate or modify their judgments after the term at which they were rendered, among other causes, for: "Fifth. For erroneous proceedings against an infant, or person of unsound mind, where the condition of such defendant does not appear in the record, nor the error in the proceedings." Section 609 provides that such proceedings, if commenced under the quoted subdivision, must be commenced within two years after the judgment was rendered, unless the party entitled to relief be an infant or of unsound mind, and, in that event, within two years after the disability is removed.

The plaintiff does not allege that the judgment attacked was rendered by default, but the defendants in their brief concede that the action is brought to set aside a judgment which does not disclose the judgment debtor's condition, so we shall consider this case on the theory that the judgment was not defended by a guardian *ad litem*, and it is admitted that the general guardian had no notice of the pendency of the action.

In the circumstances of this case as they now appear, it was error to render judgment against the incompetent upon this fraudulent claim, but, since the record is fair, the wrong cannot be corrected by appellate proceedings. The guardian had a right at any time during his ward's incompetency to appear in the county court and have the judgment set aside. *Martin v. Long*, 53 Neb. 694. But is he limited to that forum in applying for relief? In *Radszuweit v. Watkins*, 53 Neb. 412, we held that where a judgment was rendered in a county court upon a cause of action predicated upon forged promissory notes, and the sole notice to the judgment debtor was by leaving a copy of the summons at his residence, which process did not come to his notice until after a transcript of the judgment had been filed in district court and an execution issued thereon had been levied upon his property, an action might be maintained by him in the district court to enjoin the collection of the judgment. There was no question concerning the jurisdiction of the county court to render the judgment, but we held that a court of equity should grant relief where the suitor, without fault on his part, and by the fraud of his adversary or through accident or mistake, is called upon to satisfy an unconscionable judgment. We also held that section 602 *et seq.* of the code would not afford the judgment defendant adequate relief, because the county court could not prevent the sale of his real estate while he was litigating his application for a new trial. The same reasons exist in the instant case, and should entitle the plaintiff to relief, unless he is guilty of laches in failing to move for relief in the county court. It is true that equity rewards the vigilant, and not those who slumber upon their rights; but the judgment creditor was taking no steps to enforce the judgment, and the plaintiff might in reason have believed none would be taken. If Boggs had not filed the transcript in the office of the clerk of the district court for Johnson county and had not issued execution thereon, there would have been no necessity for this action, and

no necessity to incur costs by moving in the county court to set aside the judgment.

In *Wirth v. Weigand*, 85 Neb. 115, we held that the laches of a guardian *ad litem* will not be imputed to the insane person whom he is supposed to represent, and we are of opinion that, under the facts in the instant case, no laches should be imputed to Young, the incompetent, nor to his guardian, the plaintiff herein. In *Wirth v. Weigand, supra*, we held that, where the plaintiff in an action against an insane defendant prevails by fraud or perjury, the defendant's guardian may subsequently by an original suit in equity impeach the decree, and secure leave to answer or defend the original action. In that case the judgment attacked was rendered in the same court where the action in equity was instituted, but in the instant case the transcript of the judgment, which is an apparent if not an actual lien upon the ward's real estate, is part of the records of the court where this action was instituted. The sheriff of Johnson county is attempting to execute that judgment, and complete relief cannot be granted in any court other than the forum selected by the plaintiff. We therefore conclude that the petition, while indefinite in some particulars and possibly deficient in others which should appear, states facts sufficient to resist a general demurrer. What we have said with respect to the fraud of Mr. Boggs is predicated solely on the allegations in the petition.

The judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.