BERTHA LEOLA MARTIN, APPELLEE, v. IDA A. LONG ET AL., APPELLANTS.

FILED FEBRUARY 2, 1898.    No. 7810.

Parent and Child: ADOPTION: INHERITANCE. An infant was adopted by strangers. The articles of adoption provided that if she should remain with them until her majority she should receive $500. The articles further bestowed on her "equal rights and privileges of children born in lawful wedlock." *Held*, That the first pro-

vision was not exclusive as to property rights, but that on the death of the foster parents intestate, before the child reached her majority, she was entitled to inherit as if their own.

APPEAL from the district court of Cass county.   Heard below before CHAPMAN, J.   Affirmed.

*Byron Clark* and *C. S. Polk*, for appellants.

*Abbott & Caldwell* and *Beeson & Root*, contra.

IRVINE, C.

In 1885 Bertha Leola Martin, an infant, was adopted by Shadrach Cole and Agnes, his wife.  During the minority of the child Shadrach Cole died, Bertha remaining with his widow until the latter's death severed the relationship, when Bertha returned to her mother, with whose consent the Coles had adopted her.   In the course of settlement of Shadrach Cole's estate an order of distribution was made, whereby $500 was set apart for Bertha, and the remainder apportioned among the children of her foster parents.   Thereafter this proceeding was begun in the county court wherein the adoption had been effected and the estate of Shadrach Cole was administered, by Bertha Martin, through her mother as guardian, to set aside the order of distribution and award to Bertha the same rights of inheritance as rested in her foster brothers and sisters.   The basis of the proceeding was that there had been no service of notice of the hearing of the application for the order of distribution other than by publication, and that Bertha had not been represented by guardian *ad litem*.   That such was the fact was conceded.   The county court refused to vacate the original order, but the district court on appeal set it aside and awarded to Bertha her proportionate share in the estate, as if she were a daughter in fact.   This appeal is from that order.

It is suggested that the action was not properly brought.  The contention is that the right to vacate

erroneous proceedings against infants exists in favor of the infant concerned, and can be exercised by him alone after reaching his majority and within the statutory period; that there is no authority in the guardian to so proceed while the minority of the infant continues. We cannot see what policy could be subserved by such a construction of the law; and the statute invoked, section 609 of the Code of Civil Procedure, being a statute of limitations, and having manifestly for its object the extension of time within which suits may be brought by persons under disabilities, and not fixing a time when causes of action shall be deemed to accrue, we are not disposed, in the absence of authority, to so construe it as to postpone the opportunity to apply for the correction of judicial errors. The point is really not insisted upon, as counsel say in their brief that they do not desire that the case be dismissed without an adjudication of the merits.

The law with reference to the adoption of children is found under title 25 of the Code. It has been amended since the relations in question were created. As it then stood it provided in effect that the parents should file with the probate judge a signed and sworn statement relinquishing all right to the custody and control over the child and all claim to services and wages "to the end that such child shall be fully adopted by the party or parties" desiring to adopt such child. The person adopting was required to file a similar statement that he freely and voluntarily adopted the child as his own, "with such limitations and condit'ons as shall be agreed upon by the parties," and then, as a proviso, was added this language: "Whenever it shall be desirable the party or parties adopting such child may, by stipulations to that effect in such statement, adopt such child and bestow upon him or her equal rights, privileges, and immunities of children born in lawful wedlock." (Code of Civil Procedure [Compiled Statutes 1895], sec. 797.) A subsequent section (799) provided for the entry of a decree "in accordance with the conditions and stipulations of such state-

ment," reserving to the judge the right to refuse the decree if satisfied that the adoption would not be for the best interest of the child.   Then it was provided that the decree should be conclusive, that the child should take the surname of the foster parents "and all relations of parent and child, agreeable to such stipulations and the decree of the probate court, shall attach, and such child or children, if so stated in such decree, shall be subject to the exclusive control and custody of such parent or parents, and shall possess and enjoy all the rights, privileges, inheritance, heirships, and immunities of children born in lawful wedlock."   (Code of Civil Procedure [Compiled Statutes 1895], sec. 800.)   In this case the relinquishment was simple and absolute in form.   The declaration of the foster parents was as follows:

"We, Shadrach Cole and Agnes Cole, being first duly sworn, depose and say that we are residents of Cass county, Nebraska.   That we do freely and voluntarily adopt Bertha Leola Martin, a female child four years of age, the daughter of Mary Martin (the only surviving parent of Bertha Leola Martin) as our own, with the following limitations, to-wit:

"First—If Bertha Leola Martin remains with us until she arrives at her majority, she shall receive from us the sum of five hundred dollars.

"Second—If we should both die prior to her majority, her mother if living shall have control over her,— and we bestow upon her equal rights and privileges of children born in lawful wedlock.

"Shadrach Cole.<br>"Mrs. Agnes Cole."

The decree, after a bare recital of the proceedings, was as follows:

"It is therefore considered and adjudged by me that the right to the custody of, and power and control over, said Bertha Leola Martin, and to her services and wages by her mother, Mary Martin, shall and do cease and de-

termine from this date, and that said Bertha Leola Martin shall be the adopted child of said Shadrach Cole and Agnes Cole upon the conditions of the sworn statements made herein and shall     *    *    *    and be subject to their exclusive custody and control and shall possess all the rights and privileges of children born in lawful wedlock."

The question presented is whether the first stipulation of the articles of adoption, providing for a payment of $500, is an exclusive provision as to property rights, or whether, on the other hand, it is a cumulative positive provision, leaving to the adopted child also the privileges, with regard to inheritance, that actual children enjoy.   An interesting field for discussion is thus opened up, but we agree with counsel for the appellants that "the action is dependent entirely upon the construction of the articles of adoption," and it therefore presents no question of general law justifying an extended opinion. It cannot be doubted that under the statutes it was perfectly competent for the foster parents to bestow upon the child rights of inheritance as full as if she were their own, —a child born in lawful wedlock, in the awkward phraseology of the statute.   Some stress is laid upon the varying terms of the section regarding the articles of adoption and that regarding the decree.   The claim is that the child is only entitled to the right of inheritance when it is so stated in the decree.   Whether the phrase "if so stated in such decree" applies to such matters as the rights of the child or only to the custody we need not inquire, because the preceding section requires the decree to follow the articles of adoption; and it could hardly be contended that the court would be authorized by decree to confer such rights except as expressly or impliedly conferred by the articles of adoption.   This decree incorporates the provisions of the articles by reference thereto, and expressly confers, in the language of both the articles and the statute, the rights and privileges of children born in lawful wedlock.   The omission of the word "immunities" can have no significance.   The right of inheritance

is an affirmative privilege. It is not an immunity. Nor, as intimated, can the omission of the word "inheritance" be significant. The articles followed the section with relation thereto, and that section contained no such word. The use of the word in the section relating to the decree, in view of the fact that the proceeding is one contractual in its nature, and that the court could not impose an obligation not assumed by the parties, indicates, if it indicates anything, that its meaning was comprehended within the term "rights" or "privileges" employed in the section with reference to the articles whereby the obligations are by the foster parents assumed. What, then, did the foster parents mean by the articles in this case? The statute does not enlighten them and there is no extrinsic evidence as to the situation of the persons concerned which is of any assistance. It is doubtful if any competent evidence of that character could be offered. It is not doubtful that the last clause of the articles standing alone would be sufficient to confer rights of inheritance. If such was not the intention, it must be because a contrary intent is to be gathered from the first clause. In considering this it must be borne in mind that the mother of the child was a party to the proceeding and was surrendering her child to others, and that the right to inherit is not absolute, but may be defeated by will. To give an adopted child in that respect the rights and privileges of children proper would be an empty form if all such rights could be defeated by will. The most natural impulse of a mother so situated, and yielding to others the care of a child, presumably from motives touching only the child's welfare, would be to guard in this respect by requiring a stipulation for something certain when the wardship should cease; an obligation enforceable as a contract, not one resting in the mere volition of others. If this language was meant to be exclusive, it is hardly conceivable that the broad language would have been used at the close. The foster parents, if not intending to confer property rights, would

not have employed language, the most obvious import of which, as determined by usage, relates thereto. We think that it was the intention to confer upon the child all the rights of children proper, and, in addition thereto, to secure to her in any event, upon her majority, the sum specified in the first clause.

AFFIRMED.