Bilderback v. Clark.

---

No. 22,482.

ALLEN BILDERBACK et al., *Appellants*, v. MRS. FLORENCE CLARK et al., *Appellees*, CHARLES M. BILDERBACK et al., *Appellants*.

SYLLABUS BY THE COURT.

1. ADOPTION OF MINOR CHILD—*Preadoption Agreement—Child's Rights of Inheritance.* The petition alleged that a childless widow, seeking to adopt her brother's minor child, agreed with the father that she would deed to the child such portion of her estate as she desired the child to have, and the remainder of her estate would go to her brothers and sisters. The next day formal adoption proceedings, embracing consent of the father, were consummated, whereby the child became, under the adoption statute, the child and heir of the foster parent. The foster parent died intestate. *Held,* the preadoption agreement was void, and the child inherited her foster mother's estate.

2. SAME—*Findings of Jury.* The proceedings resulting in findings by the jury that a deed by the foster mother to her adopted daughter was not given in settlement of the child's expectancy as heir, examined, and held to be free from error.

47—106 KAN.

Appeal from Atchison district court; WILLIAM A. JACKSON, judge. Opinion filed May 8, 1920. Affirmed.

*J. M. Challiss, W. P. Waggener, Walter Brown,* all of Atchison, and *A. E. Crane,* of Topeka, for the appellants.

*James W. Orr,* and *Charles J. Conlon,* both of Atchison, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one by brothers, sisters, nephews, and nieces of Sarah E. Wilkins, deceased, to recover property belonging to her estate, from her adopted daughter, Dollie E. Woods, and from grantees of Dollie E. Woods and others. The plaintiffs were defeated, and, together with certain defendants interested with them, appeal.

Sarah E. Wilkins, a widow and childless, desired to adopt Dollie, the fourteen-year-old daughter of her brother, John Bilderback. A conversation relating to the subject occurred at the home of John Bilderback on Sunday, January 24, 1892, and on the next day formal adoption proceedings were consummated in the probate court. Afterwards Dollie married George Woods, and had one child, Michael Wilkins Woods. In July, 1914, Mrs. Wilkins executed and delivered to Dollie E. Woods a deed, the material portions of which read as follows:

"THIS INDENTURE, Made this 6th day of July, A. D. 1914, between Sarah E. Wilkins, widow, of Atchison county, in the state of Kansas, of the first part, and Dollie E. Wilkins Woods, of Atchison county, in the state of Kansas, and the grantees who are hereinafter named, of the second part,

"WITNESSETH, That the said party of the first part, in consideration of the sum of two thousand dollars to her cash in hand paid, the receipt of which is hereby acknowledged, and of the support and maintenance, care and other valuable considerations heretofore for many years furnished by Dollie E. Wilkins Woods, does by these presents grant, bargain, sell and convey unto said Dollie E. Wilkins Woods, one of the parties of the second part, all of the following described real estate, situated in the county of Atchison and state of Kansas, to wit: [description]; all the aforesaid property for the life of the said Dollie E. Wilkins Woods and till her death;

"At the death of the said Dollie E. Wilkins Woods all the aforesaid property shall go to Michael Wilkins Woods, son of the said Dollie E. Wilkins Woods, for his life and till his death;

"At the death of the said Michael Wilkins Woods the estate in remainder in fee shall go to the issue of the said Michael Wilkins Woods and to the heirs of the body of the said Dollie E. Wilkins Woods who may be born after the date of this deed;

"*Provided,* That if the said Michael Wilkins Woods leaves no issue and the said Dollie E. Wilkins Woods leave no bodily heirs, the above said estate in the fee shall vest in and to Florence Clark and Nora Donnelly and to their bodily heirs, or to the survivors of the said persons who are living when the said Michael Wilkins Woods and the said Dollie E. Wilkins Woods are dead."

It is said that the real estate conveyed by this deed was worth about $40,000. Mrs. Wilkins died intestate on March 8, 1915, leaving a large estate, and leaving her adopted daughter as her sole heir.

The petition contained two causes of action. The substance of the first cause of action was that the adoption was based on a contract between Mrs. Wilkins and John Bilderback, whereby he relinquished his daughter and consented to the adoption on consideration of the oral promise of Mrs. Wilkins that she would give Dollie such share of her estate as she desired Dollie to have, and the rest of her estate would go to her brothers and sisters and their heirs. Performance of the contract, by means of the adoption proceedings and the deed referred to, was alleged, and the prayer was for the entire Wilkins estate, real and personal.

Included in the first cause of action were allegations that Dollie accepted the deed as her share of her foster mother's estate, and orally released the remainder to her foster mother's natural heirs, and so estopped herself from claiming the property sued for. This feature of the first cause of action was made the basis of a second cause of action, which will be considered separately.

John Bilderback married twice. Dollie was the daughter of his first wife, who died a few days after Dollie's birth. Mrs. Wilkins took the child and reared it. A. C. (Curtis) Bilderback was John's brother. The two brothers and their wives were present when the adoption of Dollie was discussed, and the four persons were witnesses at the trial. John Bilderback testified as follows:

"On that day Mrs. Wilkins said to me that she wanted to adopt Dollie, and I said, what are you going to give her in the end? I had nothing to do with her, as Mrs. Wilkins had raised her, and she said

she would give her a good education, and that she would give her a good start, so she can make a good living without work. A. C. Bilderback said he would not do it if he were her, as Dollie would get all of her property, and she said no, she will not, as I will deed her what I want her to have. I said all right then. On the next day I went to Atchison and consented to the adoption. I agreed to Dollie being adopted. Curtis objected to her getting all of the property, and Sarah said she would not. She said she would do as she pleased with the balance."

### John Bilderback's wife testified as follows:

"At the time we lived south of Pardee in Atchison county. Mrs. Wilkins talked to my husband in my presence about the adoption of Dollie. She asked my husband to consent to her adoption of Dollie, and he asked what she would do for Dollie. She said, I will give her a good education and a start in this world's goods, and that is more than you can do; and A. C. Bilderback said, I would not do that, as this girl will get all you got; and she said, no, she will not, I will give her all that I want her to have by deed; and she turned to John and said, are you satisfied, and he said yes. John wanted to know what she was going to give her if she took her. Curtis did not want it that way. They did not ask Mrs. Wilkins to give them anything. She said she would give Dollie a good education and a good start in the world, but she did not intend to give her all of it. She did not say she would give it to John and Curtis, but to her heirs when she was ready to. She did not mention any names. John expressed his satisfaction with what Mrs. Wilkins said she would do for Dollie, and he went next day to carry it out."

### A. C. Bilderback's wife testified as follows:

"I remember being at John Bilderback's home in January, 1892, when there was a talk about adopting Dollie. John and his family, Aunt Sarah (meaning Mrs. Wilkins), my husband and myself were there, and it was on Sunday. Aunt Sarah said she wanted to adopt her, and she would give her part of her property and take care of her and school her. My husband objected and said, you are fixing it so she will get all of your property, and she said no, I will give her just what I want her to have by deed. After that John said all right. . . . My husband objected to Aunt Sarah adopting her, as he said it would give Dollie all of her property, and she said, I will give her what I want her to have."

A. C. Bilderback did not testify regarding the claimed contract.

There was testimony regarding statements made by Mrs. Wilkins years after the adoption, as to what she intended to do for Dollie, as to what would go with the rest of her property, and as to what she had done for Dollie. While this testimony may be regarded as corroborative, all the testimony establishing the terms of the claimed contract has been reproduced.

The court withdrew the first cause of action from consideration by the jury, by an instruction which, after stating the agreement on which the plaintiffs relied, reads as follows:

"It has been determined by the court that there is not sufficient evidence in the case upon which the plaintiffs and defendants in like interest are entitled to recover under such claimed contract or agreement, and even if there was sufficient evidence of such, the claimed contract or agreement is void in law as without consideration and against public policy, and the plaintiffs and defendants in like interest are not entitled to recover by reason of such claimed contract and agreement."

The instruction was correct on all the grounds stated.

The plaintiffs must depend on what influenced John Bilderback's mind. Unless his consent to the adoption were given on the condition and the promise that Mrs. Wilkins would divert all her estate not deeded to Dollie from the statutory channel of descent to her natural heirs, they have no case.

John Bilderback's concern was not for himself and his brothers and sisters and their progeny, but for his daughter. What would his sister do for Dollie? He was told what would be done for Dollie. Curtis Bilderback did not address himself to John and say, "I would not do it if I were you." He addressed himself to his sister, and cautioned her against the adoption, because the girl would get all her property. The response of Mrs. Wilkins to Curtis vindicated herself against the charge of shortsightedness respecting her estate, and disclosed her present notion as to how she would deal with it. The response to John as to what she would do for Dollie, so far as it related to property, had included merely "a good start," "a start in this world's goods," or "part of her property." The response to Curtis included deeding to Dollie what she wanted Dollie to have. After that, John said he was satisfied. With reference to Mrs. Wilkins' natural heirs getting part of her property, Curtis Bilderback's wife went no further than to say that Dollie was not to get all the property, but only that which would be deeded to her. John Bilderback's wife said that after Dollie was provided for, the property was to be given "to her heirs when she was ready to." John Bilderback, who alone could make the contract to enrich himself and Curtis and the rest, out of what would otherwise be Dollie's inheritance, testified that his sister said she would do as she pleased with the remainder of her property, after Dollie was provided for. The

result is, there was no evidence from which the contract sued on could be deduced, by any fair, just, or reasonable inference.

While the foregoing effectively disposes of the first cause of action, it is necessary to consider further the instruction whereby it was withdrawn from the jury, because the instruction was referred to by the court when directing the jury respecting the second cause of action.

If the contract sued on were made and proved, it was without valid consideration, was contrary to public policy, and void.

Adoption creates a status—the domestic relation of parent and child. The statute requires the adoption proceeding to be recorded on the journal of the court. The record must include a declaration that the child is "the child and heir" of the person adopting it. At the conclusion of the proceeding, all the legal incidents of the natural relation of parent and child attach to the new status, and the child becomes entitled to the same rights of person and property as if it were the child by birth of the person adopting it. (Gen. Stat. 1915, §§ 6362, 6363; *Dreyer v. Schrick*, 105 Kan. 495, 185 Pac. 30.) The natural parent must freely and voluntarily consent to the adoption. This consent includes consent to all the legal consequences of adoption. The result is that the contract made on Sunday between John Bilderback and Mrs. Wilkins, whereby they attached limitations to the domestic status which Dollie was to gain, was abrogated on Monday by legal proceedings in which they were both participants.

It is elementary law that the aim and end of adoption statutes is the welfare of children. The theory of the adoption statute is that such welfare will be best promoted by giving an adopted child the status of a natural child. An incident of that status is capacity to inherit in case of the parent's intestacy. The care with which that capacity is conferred by the adoption statute has been indicated. In the Dreyer case just cited, it was held that adoption of a child by a testator revokes his previously executed will, to the same extent as birth of a child. The statute establishes the public policy of the state, and any contract between the parties interested in an adoption proceeding, which would make the result of the proceeding contradict the statute, contravenes that policy. It is perfectly true that a foster parent may, by various means, deprive his adopted

child of its expectancy, just as a natural parent may disinherit his own child. The fortunes of the child are left to parental consideration; but the fortunes of the child must have parental consideration, and no preadoption contrivance can thwart fulfillment of the statute by embarking an adopted child upon its career stripped of the attributes and privileges of an heir.

The views which have been expressed apply to the subject of consideration. As counsel for Mrs. Woods suggests, it may well be doubted that a parent may barter his child to adoption by another for any valid consideration other than benefit to the ch'ld. However this may be, a preadoption agreement which undertakes to place a child in any other relation to its foster parent than heir cannot be claimed as a consideration for yielding consent to adoption. If by oral bargain, concealed from the court solemnizing the adoption, a parent may sell his child for a share of the child's prospective patrimony, as the contract in this case contemplated, welfare of children may become a mere incident instead of the desideration of adoption proceedings.

Cases are cited in which agreements to give the adopted child all or specified portions of the adopting parent's property have been enforced. The distinction between such agreements and the contract under consideration is clear. They are not derogatory to the child's necessary status as heir; on the contrary, they augment his privileges, by disqualifying the adopting parent from depriving him of the property promised, as the parent might do but for the promise.

The nature of the second cause of action has been indicated. All the evidence introduced in support of the first cause of action was submitted to the jury in connection with the second cause of action. The jury returned a verdict against the plaintiffs, together with two special findings of fact, which follow:

"Q. 1. Do you find that on July 6, 1914, when the deed to Dollie E. Woods was executed and delivered by Sarah E. Wilkins, it was understood and agreed between the parties that such deed was to be accepted by Dollie E. Woods in full settlement of her expectancy as an heir to the estate of Sarah E. Wilkins? Answer: No.

"Q. 2. Do you find that Dollie E. Woods accepted the deed from Sarah E. Wilkins of date July 6, 1914, in full settlement of her expectancy as an heir to any interest in or to the estate of Sarah E. Wilkins, upon the event of the death of Sarah E. Wilkins? Answer: No."

It is said the face of the deed contradicts these findings. Manifestly, this is not true, and there was abundant evidence to sustain the findings.

Complaint is made that two requests for instructions were denied. Not only was the full substance of the requested instructions stated to the jury, but the subjects embraced were much more adequately treated by the court in instructions which were given.

It is said that due consideration by the jury of the second cause of action was prejudiced by the court's condemnation of the first cause of action. This cannot be true, in view of the italicized portion of the following instruction, which the court gave:

"In determining the question whether or not Sarah E. Wilkins deeded to Dollie E. Woods certain property in full of her expectancy in her estate, and whether or not Dollie E. Woods accepted the same in full of her expectancy in said estate, it is proper for you to consider all the surrounding circumstances, statements of intention, statements and acts and *agreements, if any, void or otherwise.* . . ."

The judgment of the district court is affirmed.