GEORGE H. TUTTLE, APPELLEE, v. ISABELLE WINCHELL, APPELLANT.

FILED JUNE 19, 1920.   No. 21015.

1. **Specific Performance: ADOPTION: PAROL CONTRACT.** A parol agreement of adoption, whereby a parent surrenders a child to others upon their promise to adopt, rear and educate it as their own, and to give it the same right of inheritance as a natural child, but

Tuttle v. Winchell.

which is not consummated by a statutory adoption, will, if otherwise fully performed, be enforced in case the adoptive parents die intestate, by decreeing to the plaintiff the same share in their property to which he would have been entitled if the agreement to adopt had been fulfilled.

2. ———: ———: ———: CONSIDERATION. The parent's sacrifice in giving up the child to those who promise to adopt it, and the subsequent society, companionship and filial obedience of the child, constitute the consideration for a parol contract of adoption.

3. ———: ———: ———: INVALIDATION OF CONTRACT. Where an infant child is taken by those who, in pursuance of a parol contract, agree to adopt, rear, educate, and make it an heir as if it were their own, and the child remains in their family on that footing until he attains his majority, when he leaves with their approval and consent; in an action to enforce the child's right to a share in the estate of the adoptive parents, who died intestate, faults of character or behavior on the part of the child during his minority are not proof of failure to perform his filial duty sufficient to invalidate the contract, unless it is shown that the adoptive parents rescinded the contract and terminated the relation because of such conduct.

APPEAL from the district court for Hamilton county: GEORGE F. CORCORAN, JUDGE. *Affirmed.*

*Hainer, Craft & Edgerton,* for appellant.

*Fawcett, Mockett & Walford* and *M. F. Stanley,* contra.

DORSEY, C.

The plaintiff brought this suit, and obtained a decree therein in the court below, for the specific performance of an alleged parol agreement by Earl Tuttle and Catherine Tuttle, his wife, to adopt the plaintiff and to make him their heir. The only other interested party is Isabelle Winchell, the daughter of Mr. Tuttle, in whom the interests of all the heirs at law are merged, and who prosecutes this appeal. The effect of the decree is to vest her with the title to the undivided half of the property and the plaintiff with the remaining half; whereas, if the plaintiff should not prevail, she would be entitled to all of it. Mr. Tuttle died in 1914, and his wife in 1917, both intestate.

The appellant, Isabelle Winchell, admits that the Tuttles took the plaintiff and reared him, but denies that they entered into any contract to adopt him or to make him an heir. She also alleges that his behavior toward Mr. and Mrs. Tuttle was not such as was due from a son to his parents, and that he is thereby precluded from recovery.

In 1881 the plaintiff's mother, Ellen Purdy, widow of David Purdy, his father, was living in Hamilton county, Nebraska, at the home of an aunt, and had the little boy, then between two and three years old, with her. It appears that she was working out, and, as her aunt was old and infirm, there was no one to give the child proper care during her absence. Earl Tuttle and his wife were well-to-do people, owning and residing upon a quarter-section of land in the neighborhood.

The circumstances surrounding the taking of the boy by the Tuttles are related by the plaintiff's mother in her deposition taken in California in January, 1919. Her name then was Ellen Criddle; she having married again shortly after the Tuttles took the boy. She testified that, having heard she was trying to get some one to look after the boy, they called upon her, stating that they wanted him; that they would take him and educate and provide for him as their own; that they would have the papers made out and adopt him, and that he should live with them the same as the daughter and be an equal heir with her; that she did not want to give up the boy, but thought it was better for him to have a home, and that she accordingly assented to the proposition of the Tuttles. About a week later, while she was away working, they came, she said, and took the boy away. She lived in the neighborhood until the boy was grown, but never after that asserted any right or control over him. The Tuttles, she said, never complained to her about the boy or asked that he be taken back.

It appeared, without substantial dispute, that the boy remained a member of the Tuttle family until he had grown to manhood; that he was known in the neighborhood and at school as George H. Tuttle; that he addressed Mr. and Mrs. Tuttle as his parents, and that they treated him the same way and on the same footing as the daughter, Isabelle. In 1885 the daughter, then 24 years of age, married I. H. Winchell and left the Tuttle home. Thereafter the plaintiff was the only child in the household. After he became 21 the plaintiff left the Tuttle home, with the approval and consent of Mr. and Mrs. Tuttle, so far as the record shows.

As tending to discredit the testimony of Ellen Criddle relative to the contract, three women, who lived in the neighborhood at the time, testified for the defendant to statements made by the plaintiff's mother to the effect that the Tuttles had not adopted the boy, but intended only to take care of him. Letitia Wright testified that Mrs. Purdy told her that she had not made out adoption papers because she might want the boy herself after she married Criddle. Alice Chaney testified that Mrs. Purdy told her the Tuttles were not going to adopt him, because it would not look well to change his name. The trial court likewise admitted, over the plaintiff's objections, the testimony of three witnesses that Mrs. Tuttle had told them that she and her husband had not adopted George and did not intend to, but had only taken him to raise. Charles Fry also testified, over objection, that Mrs. Tuttle told him the boy had never been legally adopted; "that they thought they would when they first got him, but that they didn't do it."

It is upon the testimony of Ellen Criddle that the establishment of the alleged contract of adoption principally depends. The defendant assails the credibility of her story upon the ground that she detailed language used by Mr. and Mrs. Tuttle with too much pre-

cision, in view of the fact that 38 years had elapsed since their conversation, and that the language which she says they used was so nearly like that required to make a case for the plaintiff as to indicate a desire to manufacture testimony to help the plaintiff. It is said, moreover, that her story is improbable, for the reason that a mother situated as she was, incumbered with a child that she was without means of properly caring for, who had been trying to get someone to take it, was not likely to have insisted upon an' agreement to adopt, but would have been glad to shift her responsibility to any suitable person, who would agree merely to assume the custody, nurture and education of the child.

A careful reading of this testimony, with the foregoing criticism in view, leads us to the conclusion, however, that Mrs. Criddle related the facts as she remembered them, and that she did not embellish her story in order to assist the plaintiff. However difficult or impossible it might be, after such a lapse of time, to recall ordinary and unimportant matters, it is by no means so remarkable as to arouse suspicion that a mother should retain an accurate recollection of the import and details of a conversation dealing with her permanent separation from an infant child, nor does it seem improbable that the plaintiff's mother should have felt some concern for plaintiff's future interests, in arranging to surrender him to the care of strangers. Although such an arrangement may have suited her, it is not to be assumed that she would relinquish her child without assurances as to its future status and welfare. It was to go at a tender age into another family, to grow up in a different environment, and the tie that bound it to its only living parent was to be permanently severed.

The fact that a definite and final separation was contemplated as a consideration of the agreement is borne out by the fact that the mother never afterwards re-

claimed or sought to interfere with the child, although she married again and continued for 20 years to live in the same neighborhood. During that time she visited the plaintiff at the Tuttle home only at infrequent intervals, and the relation of parent and child was never resumed between them. Considering also the attitude, circumstances and conduct of Mr. and Mrs. Tuttle in the matter, we find nothing to indicate that they would have been reluctant to adopt the boy and to give it the rights and status of a child of their own. Mr. Tuttle's daughter, Isabelle, was 20 years of age, and likely before long to leave them, as she did when she married in 1885. It was quite natural that they should feel the need and desire for another child in the family, and it is not unreasonable to suppose that, after finding a child that suited them, which they were willing to take into the family and to keep in that intimate relationship from early infancy, they intended in taking it to make the child, by adoption, in every sense of the word their own.

, There is no improbability, therefore, in the testimony of Mrs. Criddle that, when they came to see the boy and expressed their satisfaction with him, they suggested, as an inducement to her to surrender him, that they would adopt him and give him the same rights as if he were their own. Nor is the fact that they neglected to institute formal adoption proceedings evidence that the promise was not made. Except for their neglect in that particular, they fulfilled the substantial part of their agreement. The plaintiff was reared and educated as their child and bore their name. He was treated in no different way than children are ordinarily treated by their parents. He lived with the Tuttles until he came of age, and then went his way, as children are wont to do, with their apparent consent and approval.

We are mindful of the rule that parol contracts of this character must be established by clear, convincing,

and satisfactory evidence. *Peterson v. Bauer,* 83 Neb. 405. Giving due weight to the evidence and arguments presented by the defendant, we are, nevertheless, convinced that there was a contract on the part of Mr. and Mrs. Tuttle to adopt the plaintiff and to give him the same rights as if he had been their own child.

It is the defendant's contention, however, that there was not such performance of the alleged contract as to entitle the plaintiff, in equity, to specific performance. In that connection counsel cite *Overlander v. Ware,* 102 Neb. 216, that—"The work constituting the performance required under the statute of frauds must be such as is referable solely to the contract sought to be enforced, and not such as might reasonably be referable to some other and different contract or relation. Nothing will be considered as part performance which does not put the party into a situation which is a fraud upon him unless the agreement be fully performed."

The fact that the mother surrendered the boy, and gave over her authority over him to the Tuttles, without executing a formal written relinquishment under the adoption statute, cannot, it is urged, be taken as performance on her part of a supposed agreement to adopt, since her act is to be accounted for upon the theory that she was anxious to get rid of the boy, even without an agreement to adopt, in order to be free to marry again. It is likewise argued that the evidence shows the boy was insolent, mischievous, and unwilling to work; that he made little return for what the Tuttles did for him; and that his conduct was not such as to constitute performance of the contract on his part within the meaning of the rule.

In determining whether there was adequate performance of the contract on the part of plaintiff and his mother, it is important to note the distinction, in the nature and terms of the contract involved, between *Overlander v. Ware, supra,* and cases of that nature,

and the case in hand. The contract established in the instant case was that Mr. and Mrs. Tuttle would adopt the boy, and that he should live with them the same as the daughter and be an equal heir with her. This was not an express contract to convey, by will, to the plaintiff all or any specific part of the property of Mr. and Mrs. Tuttle. It did not in terms restrict their right to dispose of their property before or after their death. It only gave the plaintiff the right to inherit what remained undisposed of on equal terms with the daughter. The question of the rights of the plaintiff as against one to whom the Tuttles might have conveyed their property by will is not here involved, for they never made a will.

In *Overlander v. Ware, supra,* on the contrary, the claim sought to be enforced was to the entire estate of the decedent, not under a contract to adopt the claimant or to make him an heir, but under an alleged contract to convey all the decedent's property, in consideration of the claimant living with the decedent and caring for him as a son until his death. The consideration for the promise to convey in such cases is based upon the fundamental idea of services to be rendered, while, in the case of contracts of adoption, the consideration is the society, companionship and filial obedience of the child, together with the parent's sacrifice in giving up the child to another. *Healy v. Healy,* 66 N. Y. Supp. 927; *Winne v. Winne,* 166 N. Y. 263, 82 Am. St. Rep. 647.

The mother's performance of the contract in this case was complete upon surrender of the child. In taking into their keeping and agreeing to rear a child of tender years, Mr. and Mrs. Tuttle could not know what disposition and character the boy might develop. They could not reasonably expect the child to be wholly free from faults or defects of character. There is some testimony indicating that in his boyhood the plaintiff was of a mischievous disposition; that he would

tease and annoy Mrs. Tuttle; and that he was dis·
obedient and averse to work. Nothing so serious oc-
curred, however, as to cause a breach in his relations
with the family, and he continued a member of it until
he became of age. The record contained letters indicat-
ing that, in their latter years, Mr. and Mrs. Tuttle had
not withdrawn their affection and confidence from the
plaintiff. There was nothing to indicate that the plain-
tiff's conduct had induced them to break their con-
nection with him. In the absence of any proof of an
intention on their part to rescind the contract because
of his conduct, it will be presumed that he yielded them
the companionship and obedience demanded by the con-
tract. *Burns v. Smith*, 21 Mont. 251, 69 Am. St. Rep.
653.

If the promise to adopt the plaintiff had been consum-
mated by formal adoption under the statute, it would
have carried with it a child's right of inheritance in the
property of Mr. and Mrs. Tuttle. They made no will,
and their property was left to descend by operation of
law. Equity considers that done which should have
been done, and, since the plaintiff's right to the share to
which he would have been entitled if legally adopted
can be recognized without violating any expressed in-
tention of the deceased to the contrary, the decree
awarding him that share was just and equitable. *Pem-
berton v. Heirs of Pemberton*, 76 Neb. 669.

We accordingly recommend that the decree of the
court below be affirmed.

PER CURIAM. For the reasons stated in the foregoing
opinion, the judgment of the district court is affirmed,
and this opinion is adopted by and made the opinion of
the court.

AFFIRMED.

LETTON, J., dissents.