No. 12,124.

ESTATE OF SCHMIDT.

DILLINGHAM v. SCHMIDT.

Decided December 3, 1928. Rehearing denied December 24, 1928.

Mr. CHARLES R. BOSWORTH, Mr. S. S. ABBOTT, for plaintiff in error.

Messrs. MORRISSEY, MAHONEY & SCOFIELD, Mr. HAROLD G. KING, for defendant in error.

*En Banc.*

MR. JUSTICE ADAMS delivered the opinion of the court.

THIS case originated in the county court of the City and County of Denver. It was appealed to the district court. It is now here on writ of error, to review the action of the district court. The last named court sustained the demurrer of defendant in' error, May Liberty Schmidt, to the caveat and objections of Georgie Dillingham, plaintiff in error, to the probate of the will of John George Schmidt, deceased. Georgie Dillingham elected to stand on her caveat and it was dismissed.

The petition of the successful party in the court below, May Liberty Schmidt, for probate of the will and letters testamentary, recites, inter alia, that deceased left surviving as his sole and only heirs at law, devisees and legatees; first, the petitioner, who is his daughter-in-law and devisee and legatee, and second, Georgie Dillingham, decedent's daughter and heir at law. In point of fact, Georgie Dillingham is the granddaughter of deceased, and his legally adopted daughter. The decree in adoption was entered in the county court of the City and County of Denver, in July, 1908, about nineteen years before the will of her foster father, John George Schmidt, deceased, was offered for probate.

The will purports to give all of decedent's property to the proponent, May Liberty Schmidt. Mrs. Dillingham's objections are that decedent and his wife promised and

agreed not to disinherit her, that this promise was one of the conditions of the decree in adoption; that in violation thereof, the will attempts to completely disinherit her, and that it is therefore void. The county court and the district court decided against Mrs. Dillingham, and the will was admitted to probate.

The verified petition to adopt plaintiff in error, was filed in the county court by John G. Schmidt and Maggie E. Schmidt, his wife. The only part of the decree in adoption that is questioned, is that which relates to the promise of the adoptive parents not to disinherit, and so this is all we need to quote. Such part reads: "* * * And the court having read said petition and having examined upon their oaths the said petitioners, and the court being fully satisfied from the testimony submitted herein of the ability of the petitioners to properly rear, educate and maintain said child and their promise not to disinherit said child; which promise is one of the conditions of this decree. * * *" (Here follows a statement of other facts, concluding with the order of adoption.)

The case raises the following questions of law: (1) Meaning of the words "disinherit" or "disinheritance." (2) Legality of agreement not to disinherit. (3) Consideration as affecting legality of such agreement. (4) The contention of defendant in error that the provision against disinheritance is not a part of the decree in adoption. (5) Right of the court to incorporate such provision in such decree. (6) Further, as to jurisdiction. (7) Right of the sole devisee and legatee under the will, to contest the conditions of decree in adoption. (8) Irregularities in judicial proceedings. (9) Right of adopted child to contest the will by caveat.

1. We see nothing complicated or uncertain in the meaning of the words "disinherit" or "disinheritance," as applied to this case. Reference to almost any good dictionary will give the information. The following are some of the definitions: Disinheritance. "The act by which a person deprives his heir of an inheritance, who,

without such act, would inherit." Bouvier's Law Dictionary, (Rawle's 3d Rev.) p. 886. "The act by which the owner of an estate deprives a person of the right to inherit the same, who would otherwise be his heir." Black's Law Dictionary (2d Ed.) p. 376. The verb "disinherit," is defined in Webster's New International Dictionary as meaning, "To cut off from, or deprive of, an inheritance or hereditary succession; to prevent, as an heir, from coming into possession of any property or right which, by law or custom, would devolve on him in the course of descent." These definitions will suffice for our present purposes. They are quoted or applied in *Anglin v. Patterson,* 121 Okla. 106, 248 Pac. 632, 633; *In Re Byford's Will,* 65 Okla. 159, 165 Pac. 194. These cases construe the word "disinherit," as used in an Act of Congress relating to certain Indian tribes. The meaning is so plain that further citations are unnecessary. If the will of John George Schmidt as offered for probate be allowed to stand, it will operate as a complete disinheritance of plaintiff in error, contrary to the testator's promise theretofore made, and the decree relating thereto. It is objectionable for this reason.

2. The legality of the agreement not to disinherit is called into question by counsel for defendant in error. Their right to assail the agreement is challenged by opposing counsel. We shall speak of this later. However, assuming, only for present purposes, that the question of its validity has not been foreclosed by the former judgment or decree of the county court, entered in the year 1908, and even if we were permitted to go behind that, yet we find such agreements sustained in reason and precedent. In common with the rule in other jurisdictions, we have held a contract to make a particular will to be valid and enforceable. *Oles v. Wilson,* 57 Colo. 246, 141 Pac. 489. We see no reason why an agreement not to disinherit may not be of equal dignity, when it possesses the necessary elements of a contract, as in this instance. Other courts have so held. The one is a contract to do a

certain thing; the other, not to do it, that is, to will or not to will. "By the weight of authority the laws permitting the adoption of children confer on them simply the ordinary rights of inheritance. * * *" 1 C. J. page 1396, § 122; 1 R. C. L. page 618, § 29. Such, in general, is the effect on the adopted child's rights of inheritance under the Colorado statute. Session Laws 1927, c. 59, § 1, p. 183, amending C. L. § 5515. It does "not affect the power of the adoptive parent to dispose of his property by will, but the adoptive parent may deprive himself of the power thus to dispose of his property by a contract binding him to give the adopted child a certain share of his property." 1 C. J. page 1396, § 122; *Quinn v. Quinn,* 5 S. D. 328, 58 N. W. 808; *Martin v. Long,* 53 Neb. 694, 74 N. W. 43; *Bedal v. Johnson,* 37 Idaho, 359, 218 Pac. 641, 650; *Taylor v. Mitchell,* 87 Penn. St. 518; *Jones v. Abbott,* 228 Ill. 34, 81 N. E. 791. Such agreements "are not derogatory to the child's necessary status as heir; on the contrary, they augment his privileges, by disqualifying the adopting parent from depriving him of the property promised, as the parent might do but for the promise." *Bilderback v. Clark,* 106 Kans. 737, 189 Pac. 977, 9 A. L. R. 1622; Note to 9 A. L. R. 1628. The agreement in the case at bar was lawful and enforceable.

3. Counsel for defendant in error further attack the agreement not to disinherit on the ground of no consideration. Conceding again, only for the sake of their argument, that defendant in error is in a position to raise the point, still, it is not well taken. Among the elements of consideration existing, may well be included the acquirement by the adoptive parents of the child's love and affection, her filial obligations to them, a change in domestic relationship, the consent of the surviving natural parent to forever relinquish his paternal rights, and the child's forfeiture of her rights which she enjoyed before the adoption proceedings. It may be said that these are incidental to any adoption proceeding, but even so, it is

not to be inferred that the natural parent's consent would have been obtained, or that the court would have deemed it to have been for the best interests of the child to decree the adoption, had it not been for the promise. Concerning the parties, as said by the Supreme Court of Pennsylvania in *Taylor v. Mitchell, supra,* natural love and affection moved them to stipulate as they did. And here, other moving causes are apparent. Discussions concerning the matter of consideration, similar to what we have said, will be found in cases from other jurisdictions, above cited. See also *Tuttle v. Winchell,* 104 Neb. 750, 178 N. W. 755, 11 A. L. R. 814. It does not often happen that the consideration for a contract merged in a decree appears on the face of the final order, and seldom as clearly as in this one.

4. It is contended by counsel for defendant in error that the inhibition against disinheritance is not a part of the decree in adoption. We think otherwise. Section 5514 requires the court in its order to set forth the facts. One of these facts was the promise of the petitioners not to disinherit the child, "which promise," so the order reads, "is one of the conditions of this decree." It is difficult to see how language could be plainer. A fact of the highest importance being thus incorporated in the decree, and made a part of it, it is of little if any consequence on what line or in what paragraph it is inserted, or whether printed or written. It permeates the entire decree, and merely by crediting our eyesight, we hold that it is there.

5. As to the right of the court to make the order, or impose the condition: Counsel for defendant in error argue that the proceedings in adoption are statutory. This is true. *Graham v. Francis,* 83 Colo. 346, 265 Pac. 690. The statute will be found in C. L. 1921, chapter 120, being sections 5512, 5513, 5514 and 5515 of such laws. Section 5515 is amended by Session Laws 1927, c. 59, § 1, p. 183, in a matter not material here. Counsel for defendant in error then go on to say that the statute does

not require the adoptive parents to agree not to disinherit the adopted infant. This, too, is a fact, but it may also be added that the statute does not prevent them from making such a binding agreement. It does not follow that the agreement cannot be the subject of judicial cognizance merely because it is not statutory. One of the purposes of adoption proceedings is to change the succession to property. Session Laws 1927, c. 59, § 1, p. 183; *Graham v. Francis, supra.* And in the present case, the provision or agreement mentioned was not in derogation of the statute, but in furtherance thereof, that is, to make it more certain that its objects would be accomplished by insuring to plaintiff in error the enjoyment of the right of inheritance. Counsel for defendant in error are mistaken in supposing that it was mandatory on the court to decree the adoption without the condition mentioned. The argument might have merit if the court had been satisfied that it would have been for the best interests of the child to so decree without the provision, but this we have no right to assume. The contrary is evident. Of necessity, the court must be vested with discretion in adoption proceedings, considering the child's welfare. 1 C. J. page 1389, § 93. And the exercise of such discretion, when not abused, will not be interfered with. Bancroft's Probate Practice, vol. 4, § 1447.

6. To make decrees in adoption is only one of the many items of business of the county court. It is a court of general jurisdiction, within its constitutional limitations. It had jurisdiction over the person of each interested party and the subject matter. This subject matter, as the decree on its face shows, was the welfare of the infant, her adoption, and the question of her inheritance, all of which are germane to the statute. Thus equipped, the court pronounced a valid judgment. Whether the two matters, i. e., the adoption and agreement not to disinherit, could or could not have been united in one proceeding, if seasonable objection had been made at the hearing, and one writ of error, by a

party having the right to raise the point, is a question that is not before us.

7. As to the right of defendant in error, sole devisee and legatee under the will, to contest the conditions of the decree in adoption: For various reasons, she is not in a position to do so successfully. John George Schmidt, the testator and adoptive father of plaintiff in error could not do so if he were alive, on any ground here urged, for, as we said in *Graham v. Francis, supra,* (83 Colo. 347, 354), "Parties who have voluntarily submitted their controversy to a court having jurisdiction .of the subject matter, cannot be allowed to question its authority. *Christ v. Flannagan,* 23 Colo. 140, 46 Pac. 683; *Whipple v. Wessels,* 66 Colo. 120, 127, 180 Pac. 309." Defendant in error is in no better position than Schmidt would have been. She is in privity with him, the recipient of his misplaced bounty, in his unlawful attempt to give to her, by his last will and testament, the rights of plaintiff in error, and thus defeat the latter's rights of inheritance. In this matter, the rights of the beneficiary under the will are measured by the rights of her benefactor, the deceased testator.

8. Construed in the light most favorable to defendant in error, the express condition against disinheritance in the 1908 decree, was at best, a mere irregularity, if even that, committed by the county court in the exercise of its jurisdiction. In the subsequent collateral attack, the court was powerless to review such irregularity, even if it had been serious enough to reverse the old case on writ of error. *Kavanagh v. Hamilton,* 53 Colo. 157, 171, 125 Pac. 512; *Clarke v. Asher,* 53 Colo. 313, 314, 125 Pac. 538; *Stokes v. Kingsbury,* 63 Colo. 27, 29, 31, 164 Pac. 313; Black on Judgments, § 245. This principle has been frequently applied in other jurisdictions, in matters concerning adoption and infants' property rights. Note to 16 A. L. R. 1024; 1 R. C. L. page 625, § 35; *Appeal of Wolf,* 10 Sadler (Pa.) 139, 13 Atl. 760; *Bird v. Young,* 56 Ohio St. 210, 46 N. E. 819; *Bass v. Morton,* 155 Tenn. 378,

293 S. W. 532. It is to be remembered that we are now considering the demurrer to the caveat, and we find nothing in the record to take the present case out of the general rule stated.

, 9. Concerning the right of the adopted child to contest the will by caveat: Plaintiff in error, adopted during her childhood by the testator, filed her caveat and objections to the probate of the will under section 5211, C. L. 1921, which reads as follows:

"On or before the day set for the hearing of the probate of such will, or the day to which such hearing may be continued, any person served with citation, as provided by law, or appearing at such probate, desiring to contest said will, or object to the validity or legality of all or any portion of the contents thereof, shall file in the county court a caveat or objections, in writing, which objections shall be subject to demurrer for insufficiency or motion to make more specific, definite or certain, and to amendment and answer as a complaint and answer in civil cases, and shall be divided into two classes, to-wit:

"*First*—All such objections as may raise the issue as to whether the writing in question be the last will of the testator or testatrix or not, which issue shall first be tried by a jury, unless waived, according to the practice in civil actions.

"*Second*—All such objections to the legality of the contents of such will which then exist and could then be raised and determined in any other action, which class of objections shall, if such instrument be found to be a will, be heard and determined by the court, before such will be formally admitted to probate, and if, upon the hearing of such second class of objections, the court shall determine that any portion of the contents of such will is void, the court shall admit such will to probate, in so far as it shall be found to be valid and binding, and it shall be executed only in so far as its contents may be held to be valid and binding; and any portion of such estate not conveyed by such will because of the invalidity of any portion of its

contents shall be held to be intestate property, to be administered as such, by the executor or administrator with will annexed, appointed to execute such will. If the entire contents of such will be held void, such estate shall be administered as in other cases of intestacy.''

The legislature, by means of the above statute, estáblished a way to "contest" a will, "or object to the validity or legality of all or any portion of the contents thereof,'' by filing a caveat or objections. By means of the act, the law making body providently molded effective scissors, to nip confusion and litigation in the bud, at the outset of the attempted probate of a will, illegal in whole or in part. Its wisdom and utility are so apparent, and its provisions so clear, that mere reference to it is enough. "An adopted child entitled to inherit may contest.'' Woerner on American Law of Administration, (3d Ed.) vol. 2, page 726, § 217; *Bernero v. Goodwin*, 267 Mo. 427, 184 S. W. 74. Operating as we do, under the Colorado law, prolonged comments on decisions in other jurisdictions under their various statutes would be superfluous. Our statute is our guide.

A certified copy of the former decree, containing the condition against disinheritance, was attached to the caveat of plaintiff in error, and made a part thereof by express reference. The contention of counsel for defendant in error that the caveat was lacking in this regard, or in respect to matters contained in the decree, is untenable. It was as good as if recited at length in the caveat. It was also admirable in that it saved copy. Counsel for defendant in error argue that the evidence in the 1908 cause is not before us, but this merely furnishes an additional reason, if it were required, why we cannot review it.

We are not informed as to the reasons of the district court for sustaining the demurrer of defendant in error to the caveat and objections, but we have given the matter particular consideration, commensurate with the importance of the questions presented in the briefs, espe-

cially as our views are so obviously out of harmony with the ruling of the trial court.

Inasmuch as the attempted disinheritance was illegal, plaintiff in error is entitled to inherit, from all that appears of record, to the same extent as she would have been if the testator, John George Schmidt, had died intestate. The judgment will therefore be reversed with directions to overrule the demurrer.

MR. JUSTICE BURKE, MR. JUSTICE WHITFORD and MR. JUSTICE CAMPBELL concur.

MR. CHIEF JUSTICE DENISON and MR. JUSTICE BUTLER concur in the result.

MR. JUSTICE WALKER dissents.

MR. JUSTICE BUTLER specially concurring.

I concur in the result. With that part of the opinion, however, that holds, or seems to hold, that in adoption proceedings a court has power to decree that the adopting parent shall not disinherit the adopted child, I do not agree. The statute (C. L., § 5514) expressly states what decree or order shall be entered: "When the foregoing provisions are complied with, if the court is satisfied of the ability of the petitioner to bring up and educate the child properly, having reference to the degree and condition of the child's parents, and the fitness and propriety of such adoption, it shall make an order, setting forth the facts, and declaring that from that date such child, to all legal intents and purposes, is the child of the petitioner, and that its name is thereby changed."

The status created by adoption, and the rights, duties and obligations of the adopting parent and the adopted child are clearly defined by statute (C. L., § 5515): "The natural parents shall, by such order, be divested of all legal rights and obligations in respect to the child, and the child be free from all legal obligations of obedience

and maintenance in respect to them; such child shall be to all intents and purposes the child and legal heir of the person so adopting him or her, entitled to all the rights and privileges, and subject to all the obligations of a child of such person begotten in lawful wedlock; but upon the decease of such person and the subsequent decease of such adopted child without issue, the property of such adopting parent shall descend to his or her next of kin, and not to the next of kin of such adopted child."

If the court is satisfied that the circumstances justify the adoption, it makes the decree prescribed by section 5514, supra, and thereupon the results described in section 5515, supra, follow as a matter of course. The court is without power to change or modify or in anywise to alter those statutory results; to deprive either the adopting parent or the adopted child of any right or privilege conferred by statute, or to impose upon either of them burdens or obligations in addition to or other than those imposed by statute. If the court is not satisfied that the circumstances justify the adoption, it denies the application. There is no middle course.

There is nothing to prevent an agreement by the natural parent and the adopting parent, binding the latter not to disinherit the adopted child. A majority of my associates believe that such an agreement may be spelled out of the record before us. While it requires a decidedly liberal construction to arrive at such conclusion, I am not disposed, on this point, to disagree with my associates.

MR. CHIEF JUSTICE DENISON concurs in this specially concurring opinion.

MR. JUSTICE WALKER dissenting.

I dissent, for the reasons following.

The judgment now under review was rendered upon demurrer to the caveat. The caveat, after averring that the caveator is the adopted daughter of the decedent and testator, specifically refers to the decree of July 14, 1908,

a copy of which decree is attached to the caveat as an exhibit. The caveat then avers: "That the said petitioners (meaning Schmidt and his wife) were permitted to adopt the said Georgie Marguerite Trumbull, your objector herein, and said decree in adoption was entered upon the express promise and condition therein contained, among others, that petitioners and each of them promised not to disinherit said adopted child, and that such promise was and is one of the conditions of said decree."

It is then averred that, contrary to the promise, condition and agreement as aforesaid, in said decree of adoption contained, the decedent did by his last will and testament, disinherit the caveator, contrary to her vested and legal rights as an adopted child, and contrary to law, and that such last will is null and void, as against the rights of the caveator, in that it is violative of the legal and vested rights of the caveator, under the decree of adoption, and is in fraud of her rights under that decree, and of her rights as heir at law.

The decree in adoption recites that the matter came on to be heard upon the petition of Schmidt and his wife, for the adoption of the minor child above mentioned, the petitioners appearing in their own proper persons and by their attorney, and, "the court having read said petition, and having examined upon their oaths the said petitioners, and the court being fully satisfied from the testimony submitted herein of the ability of the petitioners to properly rear, educate and maintain said child and their promise not to disinherit said child; which promise is one of the conditions of this decree * * * and it further appearing to the court that consent in writing by Harry J. Trumbull, the father of said child, has heretofore been given to the petitioners herein for the adoption of said child, Georgie Marguerite Trumbull, the said Harry J. Trumbull being the surviving parent of said child, and the court being now fully advised in the premises * * *."

The decretal part of the order reads as follows: "Ordered, adjudged and decreed by the court, that the said minor child heretofore known as Georgie Marguerite Trumbull shall be from this date, to all legal intents and purposes, the child and legal heir of the petitioners John G. Schmidt and Maggie E. Schmidt, and that the name of said child is hereby changed, altered and declared to be Georgie Marguerite Schmidt, and said child shall be, and is hereby entitled to all the rights and privileges as if to them born in lawful wedlock."

The statute under which the adoption decree was entered is to be found in sections 526 to 529 inclusive, R. S. 1908. After making provision for notice and the filing of the petition, and for the consent of the natural parents or guardians, the statute in section 528 provides: "When the foregoing provisions are complied with, if the court is satisfied of the ability of the petitioner to bring up and educate the child properly, having reference to the degree and condition of the child's parents, and the fitness and propriety of such adoption, it shall make an order, setting forth the facts, and declaring that from that date such child, to all legal intents and purposes, is the child of the petitioner, and that its name is thereby changed."

Section 529 of the statute, defining the effect of the adoption, is as follows: "The natural parents shall, by such order, be divested of all legal rights and obligations in respect to the child, and the child be free from all legal obligations of obedience and maintenance in respect to them; such child shall be to all intents and purposes the child and legal heir of the person so adopting him or her, entitled to all the rights and privileges, and subject to all the obligations of a child of such person begotten in lawful wedlock; but upon the decease of such person and the subsequent decease of such adopted child without issue, the property of such adopting parent shall descend to his or her next of kin, and not to the next of kin of such adopted child."

It is not contended by plaintiff in error, and of course could not be successfully contended, that the act of adoption ipso facto deprived the adoptive parent of the right to disinherit the adopted child, by will, in like manner and to the same extent as he might do in the case of his own natural child. The contentions of the plaintiff in error, as taken from her brief, depend solely upon the special provisions of the decree now under consideration, and are stated by her counsel as follows: "That the aforesaid provisions in said adoption decree are legal, binding and enforceable, and a final judicial determination by a court of competent jurisdiction; that said promise and agreement having been once judicially ascertained, determined and decreed, the matter of such promise and agreement is res judicata, and cannot again be inquired into, litigated or re-tried; that said decree in adoption having been entered on July 14th, 1908, the same is final, conclusive, and impervious to attack either directly, collaterally or otherwise."

These contentions are in harmony with the apparent theory of the caveat. For it seems plain from the caveat that the right claimed by the plaintiff in error is made to rest, not upon contract or agreement, but upon the force and effect of the decree of adoption as a judgment. Plaintiff in error does not aver in her caveat that an agreement not to disinherit her was made between her father Trumbull and the proposed adoptive parents. She does not aver that her father relinquished his right to her custody in consideration of the promise of the adoptive parents not to disinherit her. Indeed, she does not aver any contractual arrangement or understanding between the adoptive parents and any person or party whatever, acting for or on her behalf. If she had made such allegations, and if the adoption proceedings and the decree therein had been relied upon merely to evidence such an agreement and its consummation, then she would have brought herself within the principle announced in the authorities upon which she chiefly relies in this case.

These are *Quinn v. Quinn,* 5 S. D. 328, 334, 58 N. W. 808; *Bedal v. Johnson,* 37 Idaho, 359, 218 Pac. 641, and other cases of similar tenor, some of which are collected in the annotations in 9 A. L. R. 1628.

If we test the claim of plaintiff in error by the provisions of the decree of adoption, for the purpose of ascertaining whether that decree is of force to confer upon her an indefeasible right of inheritance from her adopted parent, we must begin with the well settled proposition that in jurisdictions like ours, adoption proceedings are purely statutory, both in their origin and their scope. *Graham v. Francis,* 83 Colo. 346, 265 Pac. 690.

The statute under which the decree in adoption was entered, and which we have hereinbefore set forth, makes specific provision for the contents of the order of adoption, and specifically defines the legal rights and obligations, including those relating to inheritance, which shall ensue upon the creation of the status of adoption. The statute does not authorize the court to decree that the adoptive parent shall not disinherit the adopted child. Such a provision of a decree of adoption would be nugatory and an unwarranted attempt to augment the burdens and obligations of the adoptive parent beyond those created by the statutory law upon the subject. It would be beyond the jurisdiction of the court, in the statutory adoption proceeding, and it is not pretended that any other proceeding was pending when the decree in question was entered.

But the decree itself does not purport to adjudge that the petitioners for the adoption shall not disinherit the adopted child. The mandatory portions of the order make no mention of any such requirement, but are carefully limited and restricted within the boundaries of the statute. When Schmidt made his will without provision for the plaintiff in error, it cannot be said that he violated any order included within the decree of adoption. Plaintiff in error, however, says that the recital in the decree, of the making of the promise, coupled with the declaration

of the court that such promise is one of the conditions of the decree, makes it a matter of res judicata that the promise was made. But to whom was the promise made? And upon what consideration? It is not claimed that it was made to the parent who relinquished the custody of the child. If it was made to the court, the court was not authorized by the statute, under which it was proceeding, to exact such promise, nor to receive such promise as the agent or representative of the child. His authority was limited to determining the propriety and fitness of the adoption, in view of the legal consequences attached to such status by the statute. The discretion which the court was vested with in the matter was to determine whether or not under the circumstances of the case it was fit and proper to enter the decree of adoption. But such discretion did not extend to requiring or acting upon promises or conditions not within the scope of the statute, and which can be effective, if at all, only upon the principles of contract, and as between private contracting parties.

It is finally urged with much force, that since the decedent had the benefit of the adoption decree, in the custody and society of the plaintiff in error, during her minority, the defendant in error, who claims under him, is estopped as he would be, to question the validity of any part of the decree. But, as appears from what is stated above, the position taken by the defendant in error involves no contradiction of any part of the order made by the court. If the defendant in error is estopped as the representative of the decedent, or as one claiming under him, to impeach the recital relating to the promise not to disinherit, such estoppel could go no further than to the truth of the recital. I can perceive no ground upon which defendant in error or the decedent would be estopped to question the power or authority of the court to require such a promise, or the validity of such a promise when made. In addition to this, the caveat sets forth no facts upon which an estoppel might be raised.

There is no claim that the plaintiff in error, or anyone lawfully representing her, has been injured or misled by the recital in the decree. She has had all the benefits, so far as the record shows, which the law attaches to the adoption status. I cannot agree that she appears to be in any position to invoke the doctrine of estoppel against the chosen object of her adoptive father's bounty. The judgment should be affirmed.

Judgment reversed.