In the Matter of the Estate of CARL RAY, Deceased. Robert E. Barringer, Objector,

*Petitioner and Appellant,*

vs.

IDA ANGELOT RAY and PAUL ANGELILLO, Executors under the Last Will and Testament of CARL RAY, deceased; and IDA ANGELOT, Individually, and as Guardian Ad Litem of CARLITA NANCY RAY, a Minor,

*Respondents.*

(No. 2660; September 13th, 1955; 287 Pac. (2d) 629)

318

For the objector, petitioner and appellant the cause was submitted upon the Brief of Hawkins & Cannon of Las Vegas, Nevada, Clyde M. Watts of Cheyenne, Wyoming, and Lathrop & Lathrop of Cheyenne, Wyoming, and oral argument by L. O. Hawkins and Carleton A. Lathrop.

For the respondents the cause was submitted upon the brief of Loomis, Lazear & Wilson of Cheyenne, Wyoming, Donald M. Starnes and Clarence A. Swainson of Cheyenne, Wyoming, and oral argument by John U. Loomis.

## OPINION

BLUME, Justice

This proceeding involves principally the question whether or not one Robert E. Barringer, called the petitioner herein, is an heir and entitled to a portion of the property in this state of Carl Ray, deceased.

The record discloses the following facts: Carl Ray under the name of Melvin A. Barringer was married on September 1, 1901. The petitioner, Robert E. Bar-

ringer, was born of this marriage on June 18, 1902, in Chicago, Illinois. Shortly after his marriage and prior to the birth of the petitioner herein, decedent was confined in the Missouri state penitentiary where he remained until 1906. During his period of confinement, his then wife secured a divorce. Following his release he visited his former wife on several occasions and he saw petitioner Robert E. Barringer five or six times after that up to 1930. The last contact between the two was by telephone in 1946.

After Melvin A. Barringer was released from the penitentiary he went west and changed his name to Carl Ray. In 1943, he met his present widow Ida Angelot Ray, hereafter referred to as the widow, and courted her continuously for a number of years and married her on May 8, 1946. Prior to the marriage and on April 19, 1946, he and his present widow entered into a prenuptial agreement. The substance of this was that Carl Ray should make and keep in existence a valid will wherein and whereby the property would be bequeathed to a trustee and the will should provide that Ida Angelot Ray should receive one-half of the net proceeds of the trust estate. After the marriage of the parties, they adopted a child named Carlita Nancy Ray. On April 22, 1949, the decedent made a will in which he declared that he was a resident of Las Vegas, Nevada; that he was a married man; that his wife was Ida Angelot Ray and that at the time of making the will he had one child living named Carlita Nancy Ray who was then about 25 months of age. He gave a few bequests to some relatives in the amount of approximately $6,000. He left the balance of the property in trust to last for 20 years. He provided that $100 per month should be paid to his nephew Truman Nye; $100 per month to his adopted daughter; and $500 per month to his widow. After 20 years, the property was left to his widow and adopted daughter. He appointed

his wife Ida Angelot Ray, Cyril Wengert and Paul Johnson as trustees under his will. It appears that Paul Johnson has died since that time. Paragraph tenth of the will provides:

"If any devisee, legatee or beneficiary under this Will, or any person claiming under or through any devisee, legatee, or beneficiary, or any other person who, if I died wholly or partially intestate, would be entitled to share in my estate shall, in any manner whatsoever, directly or indirectly, contest this Will or attack, oppose or in any manner seek to impair or invalidate any provision hereof, or shall, in any manner whatsoever, conspire to cooperate with any person or persons attempting to do any of the acts or things aforesaid, or shall settle or compromise, directly or indirectly, either in or out of court, with any such contestant, or shall acquiesce in or fail to oppose such proceedings, or shall endeavor to succeed to any part of my estate, otherwise than through this Will, then in each of the above mentioned cases I hereby bequeath to such person or persons the sum of One Dollar ($1.00) only, and all other bequests, devises and interests in this Will given to such person or persons shall be forefeited and shall be distributed pro rata among such of my devisees, legatees and beneficiaries as shall not in any manner have participated in, and as shall have opposed such acts or proceedings."

Carl Ray died on July 21, 1949, and his last will and testament was duly admitted to probate in the Superior Court of Los Angeles county, California, on August 23, 1949, and in Las Vegas, Clark county, Nevada, on October 17, 1949, and in Laramie county, Wyoming, on November 13, 1950. In Laramie county, Wyoming, he left theatre property properly known as the Princess Theatre in Cheyenne, Wyoming, which is described as the fractional part of lots 1 and 2, block 391, in the city of Cheyenne, Wyoming. He also left a professional building in Las Vegas, Nevada, and a home in Los Angeles, California. Pursuant to a petition on the part of the petitioner herein, filed in the district court of

Clark county, Nevada, at Las Vegas, he was declared to be the owner of one-third of the property of the decedent by reason of the fact that he had been omitted in the will of the decedent but that said omission was not intentional. The decision of the probate court in Las Vegas, Nevada, was appealed to the Supreme Court of Nevada and the decision of the lower court was affirmed on June 27, 1952. In re Ray's Estate, 69 Nev. 204, 245 P.2d 990.

It appears thereafter that Ida Angelot Ray widow of decedent, brought an action in the courts of Nevada to enforce the prenuptial agreement. Thereafter an order was made in the district court of the state of Nevada to the effect that, because the widow had brought the foregoing action to enforce the prenuptial agreement, she was deprived of any rights under the will of the decedent except $1.00 and that all sums theretofore paid to the widow as widow's allowance should be returned to the executors of the estate.

After various proceedings were had in the district court of Laramie county, Wyoming ,in connection with the estate of the decedent, the executors on June 30, 1952, filed a final account, alleging that all debts of the estate had been paid except certain commissions and attorneys' fees, and asked that these be allowed. They also alleged that Paul Johnson, one of the trustees under the will of decedent, had died, and asked that the remaining property be distributed to the remaining trustees, to-wit, Ida Angelot Ray and Cyril Wengert, and that the report be approved. On July 10, 1952, petitioner Robert E. Barringer filed his objections to the report. He alleged that he is a son of Carl Ray, deceased, as determined by the decision and order of the court of the state of Nevada made on November 22, 1950; that he was then declared to be the owner of one-third of the estate of decedent; that the widow appealed

to the Supreme Court of Nevada but that the decision of the district court was affirmed by that court; that thereafter the widow commenced an action to enforce the prenuptial agreement heretofore mentioned; that the district court of Nevada thereafter determined that by reason of the commencement of that action the widow was entitled to $1.00 and no more and that the family allowance paid her should be returned to the executors. Petitioner asked that he be declared by the court to be the owner of one-third of the estate of decedent; that the money paid to the widow as family allowance be returned to the executors and that she be declared to have no interest in the estate except as mentioned in paragraph tenth of the will of decedent. Certified copies of the various judgments of the Nevada courts were attached.

Ida Angelot Ray and Paul Angelillo, executors of the estate, as well as the widow and adopted daughter, filed separate exceptions to the objections of the petitioner, alleging in substance that the petitioner is not interested in the estate, and has no right to file objections; that none of the objections are valid; that the fact that petitioner has no interest in the estate is res judicata by reason of prior proceedings in the court. This matter of res judicata will be mentioned and set out more fully hereafter.

The foregoing matter came on for hearing before the district court of Laramie county, Wyoming, apparently on February 3, 1954. Some testimony was adduced. Certified copies of the judgments of the Nevada courts were introduced and admitted in evidence. By order of February 9, 1954, the court directed that the decree admitting the will to probate be amended to show that the decedent was a resident of Las Vegas, Nevada. On the same day an order was made and entered overruling objections made to the family allowance thereto-

fore made, and dismissing the exceptions and objections of Robert E. Barringer, petitioner herein. On April 5, 1954, a further order was made and entered approving the final account of the executors, showing that all debts have been paid, except amounts due the executors and attorneys, and allowing the executors the sum of $2,017.42, Donald Starnes the same amount, and $300 to Clarence A. Swainson for services as attorney rendered by them. The court also distributed the remainder of the estate of the decedent in this state to the surviving trustees under the will, to-wit, Ida Angelot Ray and Cyril Wengert. From these orders the petitioner Robert E. Barringer has appealed to this court.

The record shows that decedent's widow has no property of her own. The situation then confronting us is briefly this: The Nevada courts held that the petitioner was entitled to one-third of the estate of the decedent. As a result the widow consulted counsel, and upon his advice she brought an action to enforce the prenuptial agreement, doubtless with the intention, though mistakenly, to keep the will intact as nearly as possible. The Nevada district court took a different view and held that this action came within the penalty provision of paragraph tenth of the will and that she took nothing under it, or rather only one dollar; it cut off all allowance to the widow, ordered what she had received to be returned and rendered judgment against her for $1,500. Whether these decisions are right or wrong, the fact remains that so far as the record shows the widow of decedent, the principal beneficiary of the will is left utterly penniless so far as Nevada is concerned. That leaves us somewhat perplexed. One cannot help but wonder whether a penalty clause like paragraph tenth of the will, doubtless taken out of some form book, could apply to a person for whose chief benefit the will was made. This court is now asked to complete what was done in Nevada, strip the widow of all property

rights and leave her penniless also so far as this state is concerned. They ask that in the name of the law, contending that this court is bound to follow the path laid out for us by the Nevada courts. We might say parenthetically that the ultimate cause of this unfortunate situation is probably, or not unlikely, the fact that Carl Ray, ashamed of his conduct and his record of his younger days, attempted to keep the memory of his life clean in the eyes of his wife and his adopted daughter, and felt that he could not do so by naming in his will a son with a different name than his own. The course taken was, of course, a mistake. Had he confided in his counsel the difficulty, or what he thought was a difficulty, could doubtless have been easily remedied. The testator had forgotten that children, through greed or injured pride, at times mercilessly expose to the public a parent's shame and misconduct, long hoped for by the latter to have been forgiven and forgotten.

We are asked by the petitioner herein to hold (1) that he, as a pretermitted child, is entitled to one-third of the estate of the decedent; (2) that the widow is entitled to nothing (or $1.00); and (3) that she should return what she has received as widow's allowance. If the first request is denied, as we think it must be, then the petitioner would have no interest in the estate, and hence would have no right to question the interest of the widow in the property of the decedent, either as an heir under the will or as the widow. In re Merrill's Estate, 89 Cal. App. 2d 826, 202 P.2d 123; 34 C.J.S. § 884, p. 1067. Hence our main inquiry herein must be in connection with the first contention. And it may be observed that the property involved herein is real estate and some income therefrom. It is not contended that the income stands on a different footing from real estate.

1. Full Faith and Credit Clause.

It is contended that since the Nevada courts gave to the petitioner one-third of the estate of the decedent we must do likewise. That court did so under the statute of that state, § 9919, N.C.L. 1929, which we do not have, reading as follows: "When any testator shall omit to provide in his or her will for any of his or her children, or for the issue of any deceased child, unless it shall appear that such omission was intentional, such child, or the issue of such child, shall have the same share in the estate of the testator as if he or she had died intestate." It is contended that we must give full faith and credit to the judgment of the Nevada court under the provision of the Constitution of the United States reading that: "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." That provision is considered under the subject of Judgments in 50 C.J.S. 469 and subsequent pages. On pages 471 and 472 of that work it is stated: "The constitutional and statutory provisions for the recognition of the judgment of a sister state do not purport to give to a judgment or decree any extraterritorial effect, especially as regards real property." Again on page 485, it is said: "A judgment of the courts of a state cannot directly affect and determine the title to real property located in another state." On page 517, it is stated: "No judgment or proceeding in a probate court can affect the title of parties to lands lying in another state." In 57 Am. Jur. 626, it is stated: "Generally speaking, the foreign probate of a will is not regarded as conclusive, even with respect to the matters which it purports to determine, so far as real property in another jurisdiction is concerned. * * * It is said that a court has no jurisdiction to determine the title to real property not within the state." In Annotation, 131 A.L.R. 1026, it is said:

"Subject to statutory provisions to the contrary, express or by construction, and a few cases to the contrary, some of which are explainable on statutory grounds, it may be stated generally that the great weight of authority favors the rule that a judgment or decree of a court of a decedent's domicil passing (expressly or by implication from admission to probate) upon the validity or construction of his will, devising real property in another state, is not conclusive as to that question, so far as it concerns such real property, in the courts of the other state, either upon parties or nonparties to the proceeding in which the judgment in the former state is rendered, whether considered under the full faith and credit provision or the doctrine of res judicate or estoppel by judgment or upon general grounds as to conclusiveness of judgments."

In Annotation, 131 A.L.R. 1033, the author states:

"Although there is some authority to the contrary, the weight of authority holds that the full faith and credit provision does not render foreign decrees or probate conclusive as to the validity of a will, as respects real property situated in a state other than the one in which the decree was rendered, because (1) the foreign court has no jurisdiction or power to pass upon the title or real property not found within its territorial limits, and the constitutional provision presupposes a judgment or decree rendered by a court of competent jurisdiction; and (2) the decree of probate has no effect even in that state upon the title of real estate elsewhere, and the constitutional provision does not require the giving to foreign judgments greater effect than they have at home."

2. Doctrine of Comity.

It is further contended by counsel for petitioner that the law of the domicil of decedent controls and that hence we must adopt the foregoing statute of Nevada, as interpreted by the Supreme Court of that state, under the doctrine of comity. That doctrine is said to apply in many cases in which a cause of action, or a

demand, arises under the law of a foreign state—for instance under a contract executed in a foreign state. The doctrine, as hereafter shown, is not unlimited. It does not apply in connection with the devolution of property in a state of the forum with some possible exceptions in case of personal property. See 15 C.J.S. § 18, p. 926.

It is said in 1 Beale, Conflict of Laws, p. 426: "A probate of a will in one state does not affect the title in another. In the same way, the court cannot affect personal property not within its jurisdiction." So we said in In re Smith's Estate, 55 Wyo. 181, 200, 97 P.2d 677, 684: "Every state has plenary jurisdiction and control of the property, real and personal, within its borders." To the same effect is In re Holden's Estate, 110 Vt. 60, 1 A.2d 721, 119 A.L.R. 487, 489, and cases cited. In 11 Am.Jur. § 30, pp. 328, 329, 330, it is stated:

"A principle of law which is acquiesced in by the jurists of all civilized nations and thus part of the jus gentium is that all real or immovable property is exclusively subject to the laws of the country within which it is situated, and no interference with it by any other sovereignty can be permitted. Therefore, all matters concerning the title and disposition of real property are determined by what is known as the lex loci rei sitae, which can alone prescribe the mode by which a title to it can pass from one person to another or an interest therein of any sort can be gained or lost. This general principle includes all rules which govern the descent, alienation, and transfer of such property and the validity, effect, and construction of wills and other conveyances."

In Restatement, Conflict of Laws, § 245, it is said: "The law of the state where the land is determines its devolution upon the death of the owner intestate." And in section 249, it is stated: "The validity and effect of a will of an interest in land are determined by the law of the state where the land is." In De Vaughn v. Hutchin-

son, 165 U.S. 566, 17 S.Ct. 461, 462, 41 L.Ed. 827, the court stated: "It is a principle firmly established that to the law of the state in which the land is situated we must look for the rules which govern its descent, alienation, and transfer, and for the effect and construction of wills and other conveyances." In Clarke v. Clarke, 178 U.S. 186, 20 S.Ct. 873, the point was discussed at great length and the same result was reached. To the same effect is 15 C.J.S. § 19, pp. 936, 941; 68 C.J. § 251, p. 625; 2 Wharton, Conflict of Laws, § 560, p. 1282; 2 Beale, Conflict of Laws 974; 1 Woerner, American Law of Administration, 3d Ed., §168, p. 583; Goodrich, Conflict of Laws, § 163, p. 440. The cases on the subject are numerous and so nearly unanimous that it would be useless to attempt to discuss them all. We might incidentally say that the result in Hilton v. Stewart, 15 Idaho 150, 96 P. 579, cited to us by petitioner was correct. It turned, in the main, on the admissibility in evidence of a decree in Utah. The holding that such degree was res judicata in Idaho seems to be in conflict not only with the general rule above stated, but also with 57 Am.Jur. § 957, p. 626, where it is said: "Neither the doctrine of res judicata nor that of estoppel by judgment requires that a judgment in a proceeding to probate a will be held conclusive as to real property left by the decedent in another state." And see Annotation, 131 A.L.R. heretofore cited.

### 3. Law of Wyoming.

We regard it then as settled law that the devolution of real property in this state and the effect of the decedent's will must be determined by the laws of this state. What, then, is the law of this state? We do not have a statute such as that of Nevada heretofore quoted, or any statute similar to it. We pointed out in Burns v. Burns, 67 Wyo. 314, 224 P.2d 178, that the legislature of this state apparently intentionally omitted to make

such a statute a part of the law of this state. We hardly think that either the law of comity or the full faith and credit clause of the Constitution of the United States intended to engraft, willy-nilly, the statutory provisions of one state upon the law of another. We shall mention this point again later. We think, then, that the law of this state is that declared in the case of Burns v. Burns, supra, in which we held that a pretermitted child in a will was not entitled to any part of the estate of the decedent. We adopted the common law rule that a testator is free to bestow his bounty upon those whom he wishes subject to statutory limitations. We know of no such limitation that applies in the case at bar. If the will is otherwise valid, the fact that a child or other descendant is omitted from the will makes no difference. The question is whom did he mention. In the case at bar he did not mention the petitioner herein. He is not, accordingly, entitled to any part of the estate left by the decedent in this state.

Notwithstanding our decision in the Burns case, counsel for the petitioner contend that we should adopt the law of the domicil of the decedent, namely that of Nevada, as interpreted by the Supreme Court of that state; that we have not decided that it is the fixed policy of this state to deny a pretermitted child the right of inheritance; that the decision of the court of the domicil of the decedent is binding upon us, unless expressly prohibited by some statute of Wyoming or against the public policy of this state. But when we said that we adopted the common law under which the testator may bestow his bounty upon whom he wishes, what more was there to say? It is hard to see the soundness of the contention for the petitioner, when, in substance, it consists of attempting to engraft on the law of this state a statutory provision of another, which we do not have.

There are several reasons why we cannot adopt the contention of the petitioner herein:

First. It is stated in 15 C.J.S. § 3, p. 833, that "the rule, universally reiterated, that no law, statute, or otherwise has any force or effect of its own beyond the limits of the sovereignty from which its authority is derived." See also Restatement, Conflict of Laws § 1. There are exceptions to the rule, but the rule is almost universally applied (though a few decisions seem to be to the contrary) in connection with the devolution of real property situated in the state of the forum. It is said in 11 Am.Jur. § 10, p. 308, that: "One state is not bound to make its laws harmonize in principle with those of other states." And in 15 C.J.S. § 4, p. 851, it is stated: "Whether the principle that foreign law or rights thereunder will be given effect   *   *   *,   it is quite clear that it is not in every case that foreign law or rights are given effect, each state or nation determining for itself as a matter of legal principle the extent to which foreign law or rights will be given effect or the doctrine of comity applied." As already stated when it comes to devolution of real property, each state follows its own laws and statutes.

Second. The rule of comity is subject to the principle that foreign laws will not be given effect when contrary to the settled policy of the forum. 15 C.J.S. § 4(4), p. 853. See to the same effect 11 Am.Jur. § 11, p. 310. We think the public policy of this state was settled by Burns v. Burns, supra, and long before that when we adopted the common law under which, as already stated, a testator may bestow his bounty upon any one he may choose, and no pretermitted child is entitled to any part of the decedent's estate, unless, perchance, it were shown that the child was pretermitted through fraud or by mistake—a fact not shown herein.

Third. If the foregoing reasons are not sufficient to

satisfy the minds of the able counsel for petitioner of the error of their contention, then let us briefly consider the statute of Nevada in question here as interpreted under the facts herein by the Supreme Court of that state.

The wisdom of a statute such as the Nevada one has been questioned in articles in 31 California Law Review 263 and 29 Columbia Law Review 748. In fact the Supreme Court of Nevada, in the decision above cited, itself seems to question the wisdom of its statute here considered, but held that it was a question for the legislature and not for the court. In view of that, it would be rather adventurous to engraft such statute on the law of this state without legislative sanction. The Supreme Court of Nevada, construing the will, held that the petitioner herein was omitted from the will and that such omission was not intentional but by oversight. The holding was in the main based on a presumption that the omission was not intentional. Such presumption does not exist in at least six states but is exactly to the contrary. 29 Col.L.R. 752. We should add, however in fairness, that the Nevada Supreme Court's decision is sustained by some of the authorities. 1 Page on Wills, 3d Ed., § 530, p. 995. Notwithstanding that, since we are entitled under the authorities heretofore cited to put our own construction on the effect of the will, we think the presumption is not justified under the facts in this case, unless it has been shown that the mental condition of the testator was such as to justify the presumption. Consider the facts in this case. The will is admitted to be valid. The soundness of mind of the testator is not questioned. It is simply unbelievable that a man of sound mind should forget that he had a son by his first wife, particularly in view of the fact that he communicated with that son as late as 1946, only three years before he executed his will, and when he had no child of his body other than the petitioner. With due

deference to the Nevada Supreme Court, we are not, we think, required to adopt what we consider an unnatural and erroneous construction of the will. No technical rule of construction should obstruct the light of truth.

We cannot, accordingly, apply the statute of Nevada in question in this case, and that independently of the fact that, as we think, the statute is contray to the rule and policy laid down in Burns v. Burns, supra. The petitioner herein is not, then, entitled to any part of the estate of the decedent situated in this state, and his objections filed herein to the final account of the executors were properly overruled and dismissed.

4. Res Judicata.

The foregoing conclusion follows for another reason. After the will was admitted to probate and on April 19, 1951, Robert E. Barringer, the petitioner herein, filed a petition in the matter of the estate of the decedent pending in the district court of Laramie county, Wyoming. He alleged that Carl Ray died testate in Los Angeles, California, on or about July21, 1949; that at the time of his death he was a resident of Las Vegas, Nevada, and left certain real property in Cheyenne, Laramie county, Wyoming; that decedent left a last will and testament which was admitted to probate in Clark county, Neveda, on October 17, 1949, and that Ida Angelot Ray and Paul Angellillo were appointed executors of the estate in the state of Nevada; that they duly qualified as such executors and letters tesamentary were issued to them. He further alleged that the foregoing executors filed a petition in the district court of Laramie county, Wyoming, for the admittance of the last will and testament of Carl Ray; that on November 13, 1950, the will was duly admitted to probate and the executors were appointed and they duly qualified; that the appraisers were appointed and filed an inventory and appraisement that fixed the value of the estate of

Carl Ray left in Wyoming at $51,146.48. He further alleged that he is the son of the deceased, having been born to Melvin A. Barringer and Laura H. Barringer, his lawfully wedded wife on June 18, 1902, in the city of Chicago, Illinois; that Carl Ray is one and the same person as Melvin A. Barringer above mentioned; that Laura H. Barringer secured a divorce from Carl Ray, then known as Melvin A. Barringer, on April 16, 1906, in Minnesota; that said Carl Ray, formerly known as Melvin A. Barringer, omitted to provide for the petitioner in his last will and testament and it does not appear such an omission was intentional; that by reason thereof this petitioner is entitled to the same share in the estate as if the testator Carl Ray, formerly known as Melvin A. Barringer, had died intestate; that the last will and testament was admitted to probate in the district court of Laramie county, Wyoming, on November 13, 1950; that six months have elapsed, no claims have been filed against said estate and it is ready to be distributed. The petitioner accordingly prayed that a time be set for a hearing of his petition by the court; that notice of the time and place fixed for said hearing be given in the manner required by law; that the court make and enter an order distributing to petitioner the share of said estate to which he is entitled.

Thereupon the executors of the estate, namely Ida Angelot Ray and Paul Angelillo, demurred to the petition of Robert E. Barringer above mentioned for the reason upon the ground that the said petition does not state facts sufficient to entitle the petitioner to the relief prayed for. Thereafter the matter came on for hearing on September 25, 1951. The demurrer filed by the executors was sustained. Petitioner was given 15 days in which to amend his petition. No amendment was filed and the court rendered judgment that: "said petitioner having failed to amend his petition as by said order allowed, now, therefore, upon motion of counsel for the

executors, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the executors under the Last Will and Testament of Carl Ray, deceased, have and recover judgment against petitioner, Robert E. Barringer, upon the petition of Robert E. Barringer filed herein, and that said petition of Robert E. Barringer is hereby dismissed." The order of dismissal was made and entered on February 17, 1953. No appeal from that order was taken. It thus appears that the same question —the important one herein—which was raised by the objection filed after the filing of the final report of the executors, was raised by the petition filed on April 19, 1951, as above mentioned. The parties were the same even though the widow and the adopted child raised the same objection as the executors. There was a final adjudication that the petitioner has no interest in the estate. The contention of the executors, accordingly, that the matter was res judicata must be sustained. It is true that when the petitioner made objections to the final report of the executors, he raised questions other than that he was an interested party, but that did not prevent the rule of res judicata to apply to the question of his interest in the estate. 30 Am. Jur. 616, § 172, note 8. And as mentioned before, the validity of these other objections depended entirely on the question as to whether or not petitioner had an interest in the estate.

It follows that there is no merit in the appeal taken by the petitioner herein and the orders and judgments of the district court of Laramie county, Wyoming, must be and are hereby affirmed.

*Affirmed.*

RinER, C. J., and HARNSBERGER, J., concur.