No. 17,943.

NADENE FOWLER QUINTRALL v. PAUL F. GOLDSMITH, ET AL.
(306 P. [2d] 246)

Decided January 7, 1957. Rehearing denied February 11, 1957.

Mr. MAX D. MELVILLE, Mr. FRED M. WINNER, Messrs. HACKETHAL & McNEIL, for plaintiff in error.

Messrs. HOLLAND & HART, Mr. JAY W. TRACEY, JR., Messrs. SEARS & GOLDSMITH, Mr. EDWARD M. SEARS, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THE parties will be referred to as they appeared in the county court: namely, plaintiff in error as "caveatrix" or by name; defendants in error as "proponents"; and the decedent Loretta Wiltse as "testatrix" or by name.

This is a case of first impression in Colorado, and though several matters are involved, the primary question is whether a child adopted by two successive sets of parents has a legal right to inherit from the first adoptive parents.

Caveatrix Nadene Fowler Quintrall was born May 6, 1927. Her original name was Helen Jean Thieman. On August 16, 1927, Arthur E. and Loretta Wiltse adopted caveatrix in a proceeding in the Juvenile Court of the City and County of Denver, Colorado. She had been declared a dependent child prior to the adoption proceedings. For some reason not disclosed by the record the Wiltses were unable to retain the child. The record shows that on February 5, 1938, the same Juvenile Court, after compliance with then existing statutory requirements, entered another adoption decree divesting the Wiltses of the child and decreeing her to be the adoptive child of Adelbert C. Fowler and Lillian M. Fowler. Lillian M. Fowler was the sister of Mrs. Wiltse, and according to the briefs the child had lived with the Fowlers since shortly after her adoption by the Wiltses. Caveatrix was not told until 1951 about her first adoption. The Wiltses apparently had no other children. Arthur E. Wiltse died prior to his wife and we are not concerned with the date of his death or the descent of his property.

On August 16, 1955, Loretta Wiltse died a resident of Jefferson County, Colorado, apparently survived by her sister Lillian M. Fowler and others. In due course her last will and testament dated February 27, 1951, and a codicil thereto dated October 27, 1953, were lodged and

set down for probate in Jefferson County. The codicil does not concern us here as to its wording. The last will and testament disposed of an estimated gross estate of $41,500.00. Minor legacies and bequests were made to various relatives. Among the minor bequests was one leaving certain personal property to Lillian M. Fowler and "If my sister Lillian M. Fowler should pre-decease me, I direct that her share of said property be divided equally between her adopted daughters Nadene Fowler Quintrall, and Delberta Fowler Shefferd, both of Denver, Colorado." This made caveatrix a contingent legatee instead of the sole heir at law which she contends she is due to her first adoption decree.

This dispute arises out of certain wording in the first adoptive decree; the rule applied in some other jurisdictions as to inheritance rights of twice adopted children; the rule announced in *Dillingham v. Schmidt,* 85 Colo. 28, 273 Pac. 21, and language in the second adoptive decree which proponents claim nullifies the pertinent wording of the first decree.

The first adoptive decree in its preamble to the order said in part:

" * * * and the Court being fully satisfied from the testimony submitted herein of the ability of the petitioners to properly rear, educate and maintain said child . . . *and their promise not to disinherit said child . . .; which promise is one of the conditions of this decree."* (Emphasis added.)

The second adoptive decree referred to the Wiltses as the "mother" and "father" of said child in the preamble to the order, but in the order itself stated " * * * that the *natural parents* of said child are hereby divested of all legal rights and obligations in respect to said child, * * *." (Emphasis added.)

Caveatrix contends that because of the express proviso in the first adoptive decree testatrix had no right to disinherit her regardless of the wording of the second decree.

The record discloses that the will and codicil were admitted to probate after a hearing and after other proceedings in the county court, the effect of which was to deny caveatrix the relief she sought. The *"Findings of Fact, Conclusions of Law and Judgment"* was entered on January 19, 1956. No objection was made below as to the form of the testamentary instruments. Motion for new trial was dispensed with and the caveatrix is now here by writ of error.

Caveatrix urges many grounds for reversal; some we find without merit and those we deem pertinent we consolidate into specific questions hereinafter answered.

*The first question to be determined is: At the time the first adoption decree was entered was the wording relating to the forced inheritance contained therein valid?*

 This question is answered in the affirmative. However unwise may have been the decision in *Dillingham v. Schmidt,* supra, we are not disposed to overrule it now and for the same reason we are not willing to extend its application. It has been the rule of this jurisdiction followed since 1928 and until the adoption of C.R.S. '53, 152-2-4, that such wording in a decree is valid and binding on the first adoptive parents. We recognize that vested rights may have accrued to some of our citizens thereunder. It seems to us however that the better rule, even in the absence of statute, would be that a court may not, in an adoption proceeding, impose a requirement, not expressly authorized by statute, as a condition to granting relief which it clearly has a duty to grant. See *Windsor v. McVeigh,* 93 U.S. 274, 23 L.Ed. 914, cited in *United States National Bank v. Bartges,* 120 Colo. 317, 337, 210 P. (2d) 600. We find nothing in the statutes in effect in 1927 authorizing the court to require prospective adopting parents to submit to such a condition precedent as the price of granting an adoption decree. We are not now concerned with whether at the time of adoption an express written contract with the

parents would have been enforceable, even though merged in the decree. Here there was no such separate contract.

Our statutes have long provided that: "Legally adopted children shall be, * * *, entitled to inherit *as fully as* children of the foster parents begotten in lawful wedlock, * * *." (Emphasis added.) Revised Statutes of Colorado (1908), Section 7042. This particular wording was carried over into Section 5154 of the Compiled Laws of Colorado (1921). Section 5515 of the 1921 Compiled Laws also contained the usual divestment of the rights and obligations of the natural parents, as well as those of the child to them, and further provides, "such child shall be to all intents and purposes the child and legal heir of the person so adopting him or her, entitled to all the rights and privileges, and subject to all the obligations of a child of such person begotten in lawful wedlock; but upon the decease of such person and the subsequent decease of such adopted child without issue, the property of such adopting parent shall descend to his or her next of kin, and not to the next of kin of such adopted child. (L. '85, p. 18, §4; R.S. '08, §529.)"

This same general intention was followed again in the Laws of 1931 (L. '31, p. 152, §5; 1935 C.S.A., Ch. 4, §5). This was the wording in effect when the first adoption affected Mrs. Quintrall.

Legislative expressions and judicial interpretations thereof in Colorado have long recognized exceptions and some variances that affect an adopted child as distinguished from his natural brother or sister. For example, the right of the adopted child to inherit from its natural parents *(unless they deny such by will);* or the fact that an adopted child can inherit from its adopter but not through him (See *Russell v. Jordan,* 58 Colo. 445, 449, 147 Pac. 693); and that the natural parents and their lineage do not inherit from the adopted child. Of course the more recent statute is C.R.S. '53, 152-2-4,

which amended the earlier laws to make even another distinction and to expressly outlaw the type of judicial condition involved here as well as express contracts not to disinherit. Caveatrix asserts, however, that this latter statute is not and cannot be retroactive. (See Colorado Constitution, Article II, Section 11, and *Brown v. Challis*, 23 Colo. 145, 46 Pac. 679.) Since the point is not material to our decision we will refrain from comment thereon.

It is clear that the legislative intent existing in 1927 was to make the law affecting adopted children in respect to equality of inheritance and parental duties in *pari materia* with that affecting natural children. No intent can be read into these statutes that the adopted child or children were to have a higher status than the adopter's natural born children, except the right to inherit from their own natural parents. Yet if they may inherit from a succession of parents and the adoptive parents cannot disinherit them by will, then that is exactly the effect of an adoption decree.

A close reading of *Dillingham v. Schmidt,* supra, discloses that apparently there was an actual outside "agreement" not to disinherit, which in turn was made a "condition" of the decree by the juvenile court, — at least the court so presumed. In any event on writ of error this court at page 35 of the opinion recognized that the "condition" may have been subject to direct attack in a proper proceeding " * * * if seasonable objection had been made at the (original) hearing * * *."

We hold that the wording in question must be construed to mean " * * * not to disinherit said child * * * " *as long as the Wiltses stood in loco parentis.* The entire purpose of the condition was contingent, whether valid or not, and was to assure that this adopted child would be treated like, and equally with, other children of the parents, if any, presuming the children inherited either by will or operation of law. There being no other

children there was no discrimination against caveatrix when she was not made a direct beneficiary in testatrix's will.

*The second question is: Was the wording of the second adoptive decree effective to divest the first adoptive parents of "all legal rights and obligations in respect to said child"?*

■ This question is answered in the affirmative. The admittedly valid decree must be read as an entity. It is obvious that the court was referring to the Wiltses as the parents named therein for they were called "mother" and "father" in the preamble. The term "natural parents" in the decree was part of the printed form used by the court and must be construed with the terms inserted and related thereto. Thus interpreted it refers only to the Wiltses. This is confirmed by the accompanying petition. The danger of using printed forms without proper changes and delineations is pointed up by this problem. The court's intent obviously was to remove the child from the first adoptive parents and the pleasures and obligations of their parenthood. It certainly would have been inequitable to have removed the joys and left the burdens.

■ When the reciprocal rights and duties and the right to inherit are all created by the same instrument a new and second order does not terminate a part only of the first order. If the first order cannot be terminated, then there can be no legal second or even third adoption of a child. We do not believe our legislature intended that there could not be more than one adoption of a child by other than its own parents.

■ Undeniably the second decree here did something to the first decree. It in fact superseded it and the relationships thereby created. Caveatrix cites *Coonradt v. Sailors* (1948), 186 Tenn. 294, 209 S.W. 2d 859, as authority for the proposition that a county court having once entered an adoption decree could not two years

later enter an order *annulling* it. There the attempted annulment was held not to have worked a disinheritance as to the adoptive parent's estate on an adopted child re-adopted by her mother. The facts there are different from those in the instant case and it is not in point. We also add that here the second decree did not attempt to annul the first decree and place the child in its former status. As we said above it *superseded* it. It gave the child a new status with new parents. One could say that technically the Wiltses did not "disinherit" caveatrix for it was a court decree that effected the change in status and which left her no longer as an heir apparent. In any event Mrs. Quintrall had only a *mere expectancy* or contingent interest and not a contract to inherit or a vested right as she alleges, so her constitutional rights were not violated. Strictly speaking no one can be an heir of a living person. Before death of the ancestor the expectant heir has "no vested interest or rights in the property which he may subsequently inherit. Any prospective interest, or right to inherit, as an heir is a mere expectancy or possibility, a mere hope or anticipation." 26A C.J.S. 654, §61.

Caveatrix urges that this is a collateral attack upon the first decree and, if not that, then it is a barred direct attack. We do not agree. A collateral attack is one that challenges the *validity* of a decree such as a decree granted without jurisdiction. *Zupancis v. Zupancis,* 107 Colo. 323, 329, 111 P. (2d) 1063. Such is not the case here. Nor is it a direct attack for the first decree was valid and is not challenged. Caveatrix's attack on the second decree, however, is a non-permissible form of collateral attack. The implied condition of remaining in *loco parentis* attached to the first decree when it was entered and the conditional right to inherit was subject to termination whenever the status of parent and child ended.

Nor was it necessary for a guardian ad litem to have

been appointed under our laws in effect in 1927 to protect the right of the minor. The law then, as now, assumed that the parents (the Wiltses) would not surrender the child nor consent to its adoption unless it was to have a proper home and care. This was true of any adoption under our laws then in effect, not just to a second adoption. Further, the state is a party to every adoption of a minor and we cannot presume that the court neglected its duty to see that the proceedings were fair and proper. The briefs of caveatrix state that: " * * * the parent's attitude must necessarily be hostile and his own interests squarely antagonistic to those of the child."; that the parents' interest was "viciously antagonistic to her best interests"; and that: "To put it bluntly, if the purpose of the second adoption was to destroy caveatrix's property right, then the adoption was a veritable masterpiece of chicanery against a 10 year old child."

We must bear in mind, as we have pointed out above, that no child whether adopted or natural, has a vested right in its parents' property. For all we know the second adoptive parents, who were closely related, may have had more wealth than the Wiltses, or the Wiltses may have become ill and unable to properly care for the child. The record shows no allegations and no evidence or offers of proof to support such charges in the trial court. We cannot say under the facts presented that due process of law under either our own or the federal constitution has been denied to this caveatrix. Due process of law has many definitions and this procedure was well within the more commonly accepted terms. 16A C.J.S., §567.

*The third question is: If the condition forbidding disinheritance is of no effect here and there is no applicable statute to prevent it, can caveatrix as a matter of law or right nevertheless inherit from her first adoptive parents?*

420

■ This question is answered in the negative. We are aware of the divergence of authority on this point. We also realize that the numerical weight of cited cases is to the contrary. However it seems to us that the better reasoned cases and the modern view is that a twice adopted child cannot inherit from its first adoptive parents unless such parents have died *prior* to the second adoption, or unless it is readopted by its own natural parents. The latest case on this point is *In re Leichtenberg's Estate,* 7 Ill. 2d 545, 131 N.E. 2d 487 (1956). There appears a full discussion of many cases on this point from many jurisdictions, pro and con, and the court concludes there is a valid reason to distinguish between natural parents of a child and the first set of adoptive parents where there is a second adoption by strangers. The logic used is that a child is always the actual son or daughter of the parents who produced it, but that it cannot logically be the adopted child of more than one set of adoptive parents at a time. As to inheritance the court points out that this is a statutory and not a vested right. Colorado still has no express statutory provision providing that a child shall inherit from a *former adoptive parent,* C.R.S. '53, 4-1-11, although other persons are set forth in our statutes. C.R.S. '53, 152-2-4 and 152-2-1. Under the rule *inclusio unius est exclusio alterius* the former adoptive parents are excluded. As a practical matter, great difficulties could arise if the rule were otherwise, for then, in theory, there would be no limit to the number of parents who might be listed by a legislature to inherit at the death of an adopted child. This could lead to serious problems in drafting wills as well as in distributions of property of such a deceased child.

■ Caveatrix cites *In re Egley's Estate* (1943), 16 Wash. 2d 681, 134 P. (2d) 943; 145 A.L.R. 821, which is contrary to *In re Leichtenberg's Estate, supra,* but we chose not to follow it and concur with the dissent therein as being in accord with our position. We note that in

*Egley's Estate* there was a five to four decision. In the absence of an express statute we agree with Justice Blake in his dissent in the *Egley* case when he said in part that "I think there is no legal or moral justification for holding that a child is entitled to inherit from adoptive parents when, during their lifetime and with their consent, it has again been adopted by others." Michigan and Oklahoma and now Illinois have led the way in correcting this situation. See: *In re Talley's Estate,* 188 Okla. 338, 109 P. (2d) 495 (1941); *In re Carpenter's Estate,* 327 Mich. 195, 41 N.W. 2d 349 (1950); *In re Klapp's Estate,* 197 Mich. 615, 164 N.W. 381 (1917).

The judgment is affirmed.

MR. CHIEF JUSTICE ALTER concurs in the result.