No. 19,541.

SCOTT W. WRIGHT *v.* ANDREW WYSOWATCKY,
ADMINISTRATOR OF THE ESTATE OF
WILLIAM SCOTT WRIGHT, DECEASED.
(363 P. [2d] 1046)

Decided July 24, 1961.

Messrs. WINNER, BERGE & MARTIN, for plaintiff in error.

Messrs. ROTHGERBER, APPEL AND POWERS, for defendant in error.

Mr. CHARLES R. ENOS, Amicus Curiae.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

WE will refer to the parties by name. William Scott Wright was the adopted son of Scott W. Wright, and was unmarried and childless. Upon his death the adoptive father sought letters of administration which were denied, and Wysowatcky, Public Administrator, was appointed to administer the estate. In refusing to issue letters of administration to Wright, the court said: "It is the view of the court an adoptive parent does not inherit from the adopted child and the court so rules." Claiming distributive shares of the estate are six natural brothers and sisters, or the children of some of them.

## SOLE QUESTION TO BE DETERMINED.

*Where an adopted child dies intestate and without spouse or issue, is an adoptive parent entitled to inherit under the intestate laws of Colorado?*

This question is answered in the affirmative.

Adoption being unknown to the common law, inheritable interest was deemed to follow the blood line, and it is only by statute that the common law rule of descent and distribution may be changed or modified. *Russell, et al. v. Jordan, et al.*, 58 Colo. 445, 147 Pac. 693. Whether the Colorado statute does or does not alter the common law rule is the pivotal point of the present controversy.

The pertinent statutes in effect at the time of the death of William are as follows:

C.R.S. '53, 4-1-11 (Adoption):

"Legal effects of final decree. — From and after the entry of a final decree of adoption the following legal effects shall result:

"(1) The person adopted shall be to all intents and purposes, the child of the petitioner or petitioners. He shall be entitled to all the rights and privileges and be subject to all the obligations of a child born in lawful wedlock to the petitioner or petitioners.

"(2) The natural parents shall be divested of all legal rights and obligations in respect to the foster child, and the adopted child shall be free from all legal obligations of obedience and maintenance in respect to the natural parents. Nothing herein contained shall be construed to divest any natural parent of any legal right or obligation where the adopting parent is a step-parent and is married to said natural parent."

C.R.S. '53, 152-2-4 (Descent and Distribution):

" * * *

"Legally adopted children and their descendants shall be, to all intents and purposes, descendants of the persons adopting such children and such adopted children and their descendants shall be entitled to inherit under the

intestate laws of this state as if such adopted children had been born in lawful wedlock to such foster parents, * * *."

These provisions were considered and construed with respect to inheritance tax assessments in *People v. Julian White*, 144 Colo. 212, 355 P. (2d) 963, where it was said:

"In considering the quoted statutes together, it is obvious that the Legislature intended to give an adopted child the *legal* status of a lineal descendant of the adopting parent or parents. It is our duty to give effect to the intention of the General Assembly when within constitutional limits. By enacting the adoption statutes, the Legislature strove to insure harmony in the family and create justice for adopted children. Any other interpretation would be oppressive and unjust. *We therefore conclude that the statutes involved in this matter clearly declare a child by adoption to have the same legal status as a natural child.*" (Emphasis added.)

The question presented is new in this jurisdiction. The courts of other states have had occasion to pass on the question, but decisions are at variance, depending chiefly upon specific statutory provisions, hence afford no satisfactory guide to a determination of the issues in the present case.

Under our statute an adopted child is accorded the same legal status as a natural child, its rights and obligations as such differ in no respect from that of a child born in lawful wedlock. Does the status of adoptive parents differ from that of natural parents, assuming all of the obligations of parenthood with respect to the adopted child, but foregoing all the benefits arising from that relationship? While courts were formerly inclined to regard adoption statutes as in derogation of the common law and therefore to be strictly construed, the humanitarian purposes of such statutes came to be recognized, and courts generally have evinced a disposition to afford them a more liberal construction. 2 C.J.S. 375, §6.

Including the adopted child in the family picture on

an equal basis with natural children of adoptive parents has been accomplished in Colorado deliberately after a history of litigation and decisions which limited or qualified the legal status of adopted children. When this court, in considering words of limitation in an earlier statute concluded that an adopted child could inherit *from* but not *through* its adoptive parents (*Russell v. Jones,* supra), the General Assembly amended the statute and removed the words upon which that decision was based. That decision and the cases following it are therefore no longer authority for the proposition that an adopted child may not inherit through its adoptive parents, and no wording of our recent statutes warrants a conclusion consonant with that of *Russell v. Jones.*

■ If, as said in the White case, an adopted child has the same legal status as a natural child, and if as stated in *Quintrall v. Goldsmith,* 134 Colo. 410, 306 P. (2d) 246, "It is clear that the legislative intent existing in 1927 was to make the law affecting adopted children in respect to equality of inheritance and parental duties in *pari materia* with that affecting natural children," and further, "the natural parents and their lineage do not inherit from the adopted child," the following situation emerges: 1. The adopted child becomes the heir of his adoptive parents as though born to them in lawful wedlock; 2. his natural parents are cut off and neither they nor their lineage may inherit from the adopted child; 3. as to his adoptive parents, the child becomes subject to all rights and obligations of a child born in lawful wedlock. The relation thus established can be nothing less than that of parent and child. To say that such status is less or different from the parent and child relationship would do violence to the clear legislative intent to create unity in the family.

Counsel for the public administrator make much of the fact that when the present comprehensive statute was adopted in 1949 the following provision of the 1931 statute was repealed:

" \* \* \* upon the death of an adopted child who is survived by neither spouse nor descendant all of his property which is not otherwise disposed of by will shall descend to the family of which he is a member by adoption, as if he had been born a member of such family; and neither his natural parents nor any other member of his natural family shall be entitled to any rights by virtue of any of the intestate laws of this State."

The 1949 statute placing the adopted child in exactly the same legal status as a natural child, the repealed matter was superfluous and added nothing to the relationship of the parties, or their rights, duties and obligations thereunder.

We note in passing that the General Assembly in the 1961 session, amended the statute on Descent and Distribution (C.R.S. '53, 152-2-4) spelling out in detail the succession of adopted children and adoptive parents, confirming what we have held to be the effect of the statute prior to the 1961 amendment.

We conclude that the statute in force at the time of the death of William Scott Wright establishes between an adopted child and its adoptive parents the relationship of parent and child with all of the incidents of that relationship.

A case very similar in its facts is that of *In re Enyart's Estate,* 116 Neb. 450, 218 N.W. 89. There, one Logan Enyart, an adopted son, died intestate, without widow or issue. The natural father of Enyart, one Koser, claimed to be his sole heir and entitled to inherit. Katherine Enyart, the adoptive mother of decedent, also claimed the right to inherit. Judgment in the trial court favored the adoptive mother. The Nebraska statute, although differing somewhat from the Colorado statute, is essentially similar except that it provides that the adoptive parents and the child shall, after adoption, sustain toward each other the usual relation of parent and child, and shall have all the right and be subject to all the duties of that relation. The court there said:

"This statute therefore defines and fixes the relationship existing between the adoptive parent and the adopted child. Pursuant to this statute, the decree of adoption created, in law, between the adoptive parent and adopted child, the relation of parent and child, and further provided that after adoption they shall have all the right and be subject to all the duties of that relation. Under our statute of descent, as it then existed and now exists, one of the rights of the child was to inherit from its parents, if they died intestate. It was likewise one of the rights of the parent to inherit from the child, if the latter died intestate, leaving surviving no widow or issue.

\*   \*   \*

"Construing our statute of adoption and descent together, this court has heretofore held that the adopted child inherits from the adoptive parent. Ferguson v. Herr, supra; Martin v. Long, 53 Neb. 694, 74 N.W. 43. But the right conferred by statute is a reciprocal one, because it depends upon a relation that is created by the adoption under our statute. The relation of parent and child having been thus created, the right of the adoptive parent to inherit is the same as was or would have been that of the natural parent. The natural parent consented to the establishment of this relation. By his formal act, he consented that another should step into his place, and, in legal effect, become the parent of his child, and thereby consented that such other person should have all the right which he, himself, but for the adoption, would have had. By his own voluntary act, Koser transferred from himself to Katherine Enyart the right of a parent to inherit from the adopted child, Logan Enyart."

Our own statute, providing that an adopted child shall be "subject to all the obligations of a child born in lawful wedlock" cannot be considered otherwise than establishing a parent and child relationship, which, if effective for one purpose is effective for all, and falls

squarely within the reasoning of *In re Enyart's Estate,* supra.

The order and judgment of the trial court is reversed and the cause remanded with directions to remove the public administrator and to issue letters of administration to Scott W. Wright. All subsequent proceedings of administration, decree of heirship and inheritance taxes should be entered in harmony with the views herein expressed.

MR. JUSTICE FRANTZ and MR. JUSTICE DOYLE not participating.