In the Matter of the ESTATE of Lawrence T. SULLIVAN, Deceased.

Wyeth B. SULLIVAN, sometimes known as Michael John Blake Sullivan and also as Michael J. Blake, Appellant (Petitioner below),

v.

John J. SULLIVAN, Individually and as executor of the Estate of Lawrence T. Sullivan, and Margaret Mary Sullivan Scott, Appellees (Respondents below).

Michael Wyeth John BLAKE, Appellant (Plaintiff below),

v.

John J. SULLIVAN, Appellee (Defendant below).

Nos. 4090, 4144.

Supreme Court of Wyoming.

Feb. 21, 1973.

Rooney & Horiskey and John J. Rooney, Cheyenne, for appellant.

Harold M. Johnson, Rawlins, for appellee-Scott.

John A. MacPherson and T. Michael Golden of Brimmer, MacPherson & Golden, Rawlins, for appellee-Sullivan.

Before PARKER, C. J., and McEWAN, GUTHRIE, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Lawrence T. Sullivan, who died on March 11, 1961, left a will bequeathing $350 to appellant, a son adopted by Colorado decree, one-half of the balance of the estate to his wife, and the residue to deceased's three natural-born children, John J. Sullivan, Margaret Mary Sullivan Scott, and Cecilia Lorette Sullivan Connor, share and share alike. Deceased's wife and his natural daughter Cecilia had predeceased him. The estate proceeded in probate quite slowly and on January 9, 1965, the executor filed his "First and Final Account with Petition for Distribution," which showed, inter alia, the estate tax appraisal for 141 shares of Sullivan Company was

$90,955.32. Decree approving the first and final accounting was filed March 30, 1966. The decree reflected that after the distribution of $350 to the appellant, Blake, the balance of the estate was to be distributed as follows: $^{15}/_{36}$ to John J. Sullivan; $^{15}/_{36}$ to Margaret Mary Sullivan Scott; $^{1}/_{36}$ to John Edward Connor, son of Cecilia, deceased; $^{1}/_{36}$ to Patricia Connor, another child of Cecilia, deceased; $^{1}/_{36}$ to Lawrence Philip Connor, son of Cecilia, deceased; and $^{3}/_{36}$ to appellant, Blake. The property to be distributed was $536.36 and 141 shares of the Sullivan Company corporate stock. The decree recited that it appeared "to the satisfaction of the Court that notice of the hearing of said Final Account and Petition for Distribution has been given for the time and in the manner prescribed by law." Appellant admittedly received a copy of the decree of distribution June 20, 1966.

On August 18, 1971, prior to the time that any distribution had been made, appellant filed a petition to determine distributive share, claiming that he had been disinherited by deceased's will. After various proceedings and hearings, the probate court entered an order on January 19, 1972, dismissing the petition. On February 8, 1972, appellant filed a complaint in the District Court of Carbon County seeking on various grounds to receive a $^{5}/_{16}$ share of the estate. John J. Sullivan filed a motion to dismiss the complaint, which after hearing was granted. The two matters have been appealed and consolidated for hearing in this court.

Appellant's actions were predicated on Colorado law with the contention that an agreement made by an adoptive parent with the court not to disinherit an adopted child is lawful and enforceable.[1] The Colorado decree of adoption in this instance, dated September 11, 1918, ordered the adoption after reciting that "the Court being fully satisfied from the testimony submitted herein of the ability of the peti-

---

1. Pool v. Harold, 149 Colo. 29, 367 P.2d 592; Quintrall v. Goldsmith, 134 Colo. 410, 306 P.2d 246; In re Schmidt's Will, 85 Colo. 28, 273 P. 21.

tioners to properly rear, educate and maintain said child and their promise not to disinherit said child; which promise is one of the conditions of this decree."

The Colorado statutes effective at that time in pertinent part read:

" * * * such [legally adopted] child shall be to all intents and purposes the child and legal heir of the person so adopting him or her, entitled to all the rights and privileges, and subject to all the obligations of a child of such person begotten in lawful wedlock * * *." Section 529, chapter 24, R.S.Colo.1908. " * * * a decree of adoption shall be rendered and entered by the Court declaring such [legally adopted] person the heir at law of the petitioner or petitioners and entitled to inherit from the petitioner or petitioners any or all property in all respects as if it had been petitioner's child born in holy wed-lock * * *." Section 2, chapter 1, S.L. of Colorado, 1911.

█ Because of the dismissal on other grounds, this aspect was not decided by the trial court and is not fully argued here; this opinion does not purport to pass upon the validity of that point. It is, nevertheless, of interest that while ordinarily a validly acquired status of adopted child in another state will be recognized in the jurisdiction where the right· of inheritance is involved, and the foreign adoption judgment or decree will be given effect subject to the conditions that the foreign court had jurisdiction to fix the status of the child with respect to adoptive parents, there is a serious question as to the application of this principle in instances where the foreign decree offends the laws or the public policy of the state where the right of inheritance is involved. In re Ray's Estate, 74 Wyo. 317, 287 P.2d 629, 636; 2 Am. Jur.2d Adoption §§ 114–116; 2 C.J.S. Adoption of Persons § 154.

It is the argument of appellant here that he was disinherited contrary to the provisions of the Colorado decree of adoption, that there had been misrepresentations and fraud as to the value of the estate, that statutes of limitation do not bar his recovery, and that laches by him do not exist. He specifically sets out that:

1. The complaint and petition do generally state a claim upon which relief can be granted.

2. He should not have been barred from his day in court by the statutes of limitation as a matter of law.

3. He should not have been barred from his day in court by laches as a matter of law.

4. Jurisdiction existed in either the probate court under the petition to determine distributive share or in equity court under the complaint to establish a constructive trust and set aside the decree of distribution and, further, the order dismissing the petition in the first probate case was not res judicata to the second equity case.

The crucial point of appellant's argument seems to be that he should not have been barred from his day in court by the statutes of limitation or laches. In discussing this he speaks of only three statutes of limitation having any possible application:

a. Section 1–333, W.S.1957, providing that proceedings to vacate or modify a judgment or order (under certain subdivisions of § 1–325, W.S.1957) must· be commenced within three years;

b. Section 1–16, W.S.1957 (read in conjunction with § 1–15, W.S.1957), providing that a civil action upon a specialty or any contract, agreement, or promise in writing must be commenced within ten years; and

c. Section 1–18, W.S.1957, providing that actions for fraud must be brought within four years from the discovery of the fraud.

Appellant presents a timetable of the relevant events; however, the time element is immaterial since under all of his contentions the pleadings were filed after the statutes of limitation had run, unless, as argued, the order of distribution was void (1) for want of the court's jurisdiction

emanating from a lack of notice of hearing on the final account and petition for distribution, (2) because of having been obtained by fraud, or (3) because under the provisions of § 1–11, W.S.1957, the statutes of limitation are inapplicable in the case of a continuing or subsisting trust.

■ Considering these points in the order listed, we find no merit in the argument that there was a lack of jurisdiction due to a failure to mail or serve the notice, Judge Stanton, the probate judge, in the Decree Approving First and Final Account and Providing for Distribution having stated that the:

> "* * * said account and petition * * * [came] on regularly * * * to be heard, and evidence, both oral and documentary, having been introduced, and it appearing therefrom to the satisfaction of the Court that *notice* of the hearing of said Final Account and Petition for Distribution *has been given for the time and in the manner prescribed by law* * * * [emphasis supplied],"

the presumption being that a judicial record speaks the truth. State v. Holm, 67 Wyo. 360, 224 P.2d 500, 512.

■ As to the alleged fraud, we note the findings of fact by the court in the order granting the motion to dismiss appellant's petition to determine distributive share where it was found:

> "That petitioner, by admitting in his pleadings that he received a copy of the decree of distribution on or about June 20, 1966, more than five years prior to the initiation of the present proceedings, admits that fraud, if any, could or should have been discovered with reasonable diligence in June, 1966 * * *,"

and the conclusion:

> "That, if any fraud did exist, the petitioner knew of the fraud or could have discovered the fraud, if any, with the exercise of reasonable diligence in June of 1966 or before. That the defense of limitations may be properly raised by a motion to dismiss. That the statute of limi-

tations governing fraud, both as to evaluation of the estate and failure to receive notice of final settlement, at the latest began to run in June 1966, when the petitioner received the decree of distribution."

A careful study of the brief and argument here presented by appellant in no way answers or contradicts the finding and conclusion of the trial court in this regard, and we hold that the statute of limitation has run against him insofar as any allegation of fraud is concerned.

■ Appellant's argument relying on the provisions of § 1–11, by implying that the instant situation presents a continuing and subsisting trust, is nebulous and unsupported by germane authority. He notes Wilson v. Martinez, 76 Wyo. 196, 301 P.2d 785, 76 Wyo. 243, 307 P.2d 605, as holding that the executor trusteeship terminates upon the entering of a decree of distribution but contends that the distribution here is "to the executor himself as a result of fraud." Such assumption without more is insufficient to make applicable the general authority on which he relies, A.L.I. Restatement, Restitution § 160 (1937); 89 C.J.S. Trusts § 15; and 54 Am.Jur. Trusts § 218. More importantly a review of his petition in the probate court discloses that the only references made to the fraud of the executor were:

> "Petitioner, at various times since the death of the testator, has been informed by the executor of the Estate that the Sullivan Company stock had little value, if any, and Petitioner therefore was led to believe that his proper share of the estate would be very small, or of no value. Petitioner was also once informed by the Executor of the possibility that there might be an assessment against the stockholders, further evidencing the lack of value of said stock."

> "Subsequently, and in recent weeks, petitioner has learned that he had been deliberately misled as to the value of the Sullivan Company stock, and that the same was appraised in the Estate at over

$75,000.00; and that the same was appraised for tax purposes at over $90,000.00; and that the probable true value is approximately $3,000,000.00."

As will be observed by inspection, these allegations are at best mere legal conclusions cast in a form to somewhat resemble factual allegations. They do not meet the fundamental requirements of allegations which constitute fraud, the basic elements of which we set out in Davis v. Schiess, Wyo., 417 P.2d 19, 21, and are insufficient to state a claim for which relief can be granted under the requirements of Rule 9(b), W.R.C.P., which provides that all averments of fraud must be stated with particularity. Brazee v. Morris, 65 Ariz. 291, 179 P.2d 442, 443; Curacao Trading Co. v. William Stake & Co., S.D.N.Y., 2 F.R.D. 308, 309. Actually, Rule 9(b) is merely a summary of long-standing precedent in the State concerning the pleading of fraud. Schaffer v. Standard Timber Company, 79 Wyo. 137, 331 P.2d 611, 615. Thus, appellant's petition contained no basis upon which to predicate the fraud of the executor, which according to the proffered thesis is essential to the application of § 1–11.

In view of our holding with regard to the statutes of limitation, there is no need to address ourselves to the matter of laches, nor is there occasion to discuss whether or not the petition generally stated a claim upon which relief could be granted since appellant correctly recognizes that if the complaint itself reflects an affirmative defense, such as a statute-of-limitation bar, it can be dismissed under the a general motion pursuant to Rule 12(b)6, W.R.C.P.

Appellant, in effect, attempted to contest decedent's will long after the time for contest had expired; and the probate court was correct in its dismissal. The fact that the court spoke of the "action" as sounding in equity and mentioned questionable jurisdiction—undoubtedly referring to the employment of equity in disposing of a probate question—does not detract from the propriety of the dismissal. We hold

the probate court to have been correct in its determination, and the litigation which the later complaint in district court presented was res judicata.

Affirmed.